## DAVID TENNY *versus* WILLIAM BEARD.

S being seized of a tract of land lying partly in lot No. 10, and partly in lot No. 9, granted to J. S. a tract of land which he described in the deed as lot No. 10, but as bounded on all sides by land of other persons—it was held, that the whole tract lying in both lots passed, although in the description of the granted premises it appeared there were mistakes as to the owners of the adjoining lots.

In a deed poll where there is a doubt, the construction must be against the grantor.

A general description may be enlarged or abridged by a particular description of the granted premises.

THIS was a writ of entry brought to recover a tract of land in Dunbarton, and was tried here upon the general issue, at January term, 1829, when it appeared in evidence, that on the 20th December, 1804, Archibald Stinson was seized of part of lot No. 10, in the fifth range of lots in Dunbarton marked on the plan B, and of part of lot No. 9, marked on the plan A ; that at the same time, B. Whipple was seized of part of lot No. 10, marked E on the plan, and Dr. Sawyer of the part of the same lot marked F ; that Caleb Mills was seized of that part of lot No. 10, marked on the plan L, and of the part of lot No. 9, marked on the plan K, H, G, and Phinehas Bailey of the part marked M. The parcel of land marked L on the plan, was purchased by Mills as part of lot No. 9. On the said 20th December, 1804, A. Stinson

conveyed to J. Stinson a tract of land described in the deed as follows :—" a certain tract of land situated and lying in said Dunbarton, it being lot No. 10, in the fifth range, and bounded as follows :—beginning at a stake and stones at the north west corner of said land, thence running easterly on B. Whipple's south line to a stake and stones, thence easterly on Dr. Sawyer's south line to a stake and stones, thence southerly on W. Beard's land and Oliver Bailey's land to a stake and stones, thence westerly on land of Caleb Mills to a stake and stones, thence northerly on land of said Mills to a stake and stones, thence westerly on said Mills' land to a stake and stones, thence northerly on land of William Stinson to the bound first mentioned."

The demanded premises, in this case, are part of lot No. 9, marked A on the plan. The tenant claimed under a deed from Jeremiah Stinson ; and the demandant under a deed from Archibald Stinson, made after the 20th December, 1804, and the question was, whether the demanded premises passed by the said deed of December 20, 1804, to Jeremiah Stinson.

## PLAN.

NORTH.

Upon these facts a verdict was taken for the tenant, subject to the opinion of the court upon the foregoing case.

*Nesmith,* for the tenant.

*Woodbury,* for the demandant.

It is contended, that as all the land which Archibald Stinson owned in lots No. 9 and 10, lay in one body, and as the land conveyed is by him bounded on all sides by land of other persons, his intention must have been to convey all his land in both lots, although the granted premises are described in lot No. 10. But the true rule is laid down by Parsons, C. J. in the case of *Worthington* v. *Hylyer, et a.*, 4 Mass. Rep. 205. When the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass except such as will agree to every particular of the description. But if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance. Cro. Car. 473, *Blague* v. *Gold*; 5 East, 51, *Roe v. Vernon*; 2 Coke, 33, *Doddington's Case.*

In the present case, the land granted is lot No. 10, and the lines of the land which the grantor owned in lot No. 10, and their courses are truly described in the deed, and there is no doubt that the grantor's land in lot No. 10 was intended to be passed. But if nothing more was intended to be conveyed, a portion of the south line of the land granted which is described in the deed as running on land of Caleb Mills, must, in fact, be considered as running on the grantor's own land in lot No. 9. And if all the grantor's land in lots No. 9 and 10 was intended to be granted, still the south line is falsely described as bounding on Mills' land, where, in fact, it runs upon Bailey's land. There is then clearly a mistake in the description of the land on the south line. And it seems

to us that the general description of the land granted, as lot No. 10, is not to be controlled by a mistaken statement of a particular fact in relation to one of the lines. The lines mentioned in the deed are stated as descriptive of the lot No. 10.

*By the court.* The question to be decided in this case is, whether the demanded premises passed by Archibald Stinson's deed made on the 20th December, 1804? The land granted by that deed is described as "a certain tract of land situated and lying in said Dunbarton, it being lot numbered ten in the fifth range." If this had been all the description, it is clear, that the demanded premises would not have passed by the deed, because those premises are found not to be within the limits of lot numbered ten. But this is not all the description. It is not lot numbered ten, however it may be bounded, that is granted, but lot numbered ten, bounded by certain monuments. The description of the land as a certain lot is, in the very terms of the deed, made subject to the more particular description by monuments, and it is not to be doubted that the latter description, so far as it is intelligible, must be our guide in ascertaining the land intended to be passed. Thus it is certain that two parcels of lot numbered ten, in the possession of Whipple and Sawyer, were not intended to be granted, because the land conveyed is described in the deed as bounding upon those two parcels. So it seems to us to be equally clear, if Mills had owned the land of P. Bailey in the south east corner of lot numbered nine, the granted premises being described as bounding there upon Mills' land, the land demanded would have passed by the deed. We are not, then, to resort to the description of the land as a particular lot, until driven to it by finding the application of the common rules of construction insufficient to enable us to ascertain by the monuments mentioned in the deed what was intended to be granted. This principle is believed to be sanctioned by common sense and

many adjudged cases. 2 Mass. Rep. 380, *Haw* v. *Bass* ; 5 ditto, 355, *Powell* v. *Clark* ; 6 ditto, 131, *Pernam* v. *Wead* ; 4 ditto, 110, *Crosby* v. *Parker* ; 14 ditto, 149, *Lunt* v. *Holland* ; 17 ditto, 207, *Davis* v. *Rainsford* ; 2 Johns. Rep. 37, *Mann* v. *Pearson* ; 15 ditto, 471 ; 16 ditto, 114 ; 17 ditto, 146, *Cragie* v. *Wilkinson* ; 1 Caine's Rep. 493 ; 19 Johns. 449, *Loomis* v, *McNaughton* ; 7 ditto, 217 ; 18 ditto, 81.

The question then, is, can the intent of the grantor in this case, be ascertained by the boundaries mentioned in the deed ?

All the grantor's land in lots numbered nine and ten, lay in one body and the land granted is described in the deed as bounded on all sides by land of other persons. Had there been no mistake as to the owners of the adjoining lands this circumstance would, in our opinion, have been decisive ; and, as it is, it must have great weight. For it is a fair presumption, that the grantor was acquainted with the boundaries of his own land, and it is by no means probable, that he would have described the line which runs west from Oliver Bailey's land, as running on Mills' land, if he, in fact intended it to run on his own land. But the supposition that he may have thought that Mills' land extended to the east line of lot numbered nine is not improbable. Nor is it unlikely that the mention of P. Bailey's land may have been omitted by mistake. It is a rule of law, that in a deed poll, where there is a doubt, the construction must be against the grantor. 8 Johns. 406 ; 4 Mass. Rep. 205. As the line running west from O. Bailey's land is described in the deed as running on the land of Mills, it seems to us, on the whole to be a fair presumption that the grantor intended to convey all his land down to Mills' line ; and although there was a mistake as to the extent of Mills' land, yet this mistake does not affect the construction of the deed, there being enough to show, to a reasonable certainty, the intent of the grantor.

*Judgment on the verdict.*