#### IN THE

## SUPERIOR COURT OF JUDICATURE,

#### FOR THE

## COUNTY OF GRAFTON, JULY TERM,

#### A. D. 1835.

## THE PROPRIETORS OF ENFIELD *vs.* S. DAY.

IF the proprietors of a township enter into a tract of land and continue in possession for twenty years, claiming the land under a charter which does not in fact cover it, this does not constitute a title, nor can the possession be deemed adverse to the title of the true proprietor.

THIS was a writ of entry, brought to recover a tract of land in Enfield. The action was commenced on the 19th April, 1833, and was tried upon the general issue at May term, 1834.

The demandants gave in evidence the charter of Enfield, which included, as they contended, the demanded premises.

The tenant, in answer to this, gave in evidence a copy of a vote of the demandants, by which the demanded premises were conveyed to John Johnson on the 2d December, 1826. To this the demandants objected that it was inadmissible until it was shown that the meeting of the proprietors at which the vote was passed was legally holden. But the copy was admitted without proof of a legal meeting.

The demandants then gave in evidence a deed, dated March 30, 1833, but which has never been recorded. This deed purported to be executed by the said John Johnson, and to convey the demanded premises to the demandants. It was delivered to one John Jones, the clerk of the proprietors of Enfield at the time it was executed ; but there was no

vote nor instructions from the proprietors directing his acceptance of the deed for them, nor any evidence of an acceptance of said deed by them, other than producing the deed in court and claiming title under it.

The tenant objected that this evidence was insufficient to show a reconveyance, but the objection was overruled.

The demanded premises are part of a gore lying between Enfield and Grantham. The south line of Enfield is described in the charter as beginning at the south-east corner of Lebanon and running south 68 degrees east, 6 miles. Enfield was granted July 4, 1761.

The north line of Grantham is described in the charter as commencing at the south-east corner of Lebanon, and running south 58 degrees east, on the line of Enfield. Grantham was granted 8th June, 1767.

Evidence was introduced on the part of the demandants, tending to prove that the south line of Enfield was originally run out and marked previous to the charter, from the corner of Lebanon south 58 degrees : that the line was stated in the charter to run south 68 degrees east by mistake ; and that the proprietors of Enfield had entered and claimed to the line running south 58 degrees east, and that the proprietors of Grantham had recognized that as the north line of their grant.

It appeared, that in the year 1801, the State, by an act of the legislature, relinquished to the proprietors of Enfield all the interest the State then had in the land between the said two lines.

The court instructed the jury that if the south line of Enfield had previous to the charter been run out and marked as running south 58 degrees east, such marked and known line would control the point of compass mentioned in the charter, and the gore must be considered as within the limits of Enfield.

The court further instructed the jury, that if the proprietors of Enfield entered upon and claimed the land as far south

Enfield
*vs.*
Day.

as the line running south 58 degrees east, under their original charter, or under the subsequent grant of the legislature, and held peaceable and quiet possession of the same for more than twenty years, no claim being made during the time by the proprietors of Grantham, but all title there disclaimed, in that case the demandants were entitled to recover.

The court further instructed the jury, that an actual entry on the part of the demandants upon a portion of the said gore, claiming the title to the whole of the same, was in law an entry upon the whole gore.

The jury returned a verdict in favor of the demandants, and the tenant moved for a new trial upon the foregoing case.

*Bell*, for the tenant.    I. The copy of the record, showing a grant of the demanded premises from the demandants to Johnson, was rightly admitted in evidence.   The copy was taken from their own records, and certified by their own clerk.   It is the only legal evidence of the acts of the party —and the demandants cannot be permitted to say that their own records of their own proceedings, kept and certified by their own clerk, are false.   The copy is certainly good *prima facie* evidence.   If it can be invalidated at all, let the demandants impeach it.

II. The deed of Johnson to the demandants is wholly inoperative.

1. Because it is not recorded.   It is no evidence against any one except the grantor and his heirs.   The tenant in this case is a stranger.

2. The demandants are, as a corporation, incompetent to accept a grant of land.   They are only a corporation for the sole purpose of conveying and distributing the township which was granted to them in their charter.   Whenever all their lands are granted they cease to be a corporation.   They can in no case purchase land in their corporate capacity.

3. But if they were competent to purchase and hold lands, there was no delivery and acceptance of the deed in

this case, until after the commencement of this action, if at all.

There is no pretence of an agreement between the demandants and Johnson for the purchase of the land, except the deed itself. There is no vote or instructions of the demandants on the subject. Johnson has done all but the producing of the deed in court ; and in fact that, too, for he is the sole acting corporation.

The delivery of the deed must be proved. It does not take effect until delivered. The delivery to Jones was no delivery to the demandants. Jones had no authority to receive the deed or hold it against Johnson.

The delivery to Jones had no more legal effect than the keeping of it in Johnson's own hands would have had. Johnson might have demanded the deed the next day of Jones, and Jones could not lawfully have withheld it.

But the precise ground of complaint on this part of the case is that the court withheld from the jury the consideration of this part of the case.

The delivery of a deed is undoubtedly a question of fact. And whether there has been a delivery or not must be submitted to the jury to determine as a matter of fact, and cannot be determined by the court.

The court in this case undertook to draw from the facts proved, and admitted the inference that the deed had been delivered.

We say that the court was not competent to draw this inference of a fact from the facts proved, and that it was a plain interference with the undoubted province of the jury.

The case of *Gardner* vs. *Collins*, 3 *Mason* 398, is directly in point.

III. The court instructed the jury, that although the demanded premises might be within the limits of Grantham, as established by the charter of that township, and the demandants have no paper title that could avail them, yet if

they entered upon and claimed the land as far south as the line running south 58° east under their original charter, or under a subsequent grant of the legislature, held possession twenty years, no claim being made by the proprietors of Grantham during the time, the demandants were entitled to recover. The jury were further directed, that an entry on a portion of the land, claiming the whole, was in law an entry on the whole.

These instructions put the demandants' right to recover entirely upon their having gained a right by claim and adverse possession, under color of the charter, or the subsequent grant of the legislature. Now this right we wholly deny. We say that if the line of Enfield was run and marked out south 68° east, when the charter of Grantham was granted, the gore passed to the proprietors of Grantham by their charter; and that no entry or occupation made under or by virtue of the charter of Enfield, so originally run out, or under any subsequent act of the legislature, can give any right to any other or more land than just what the demandants occupied for twenty years.

We contend that the imperfect title which sanctions an entry and adverse possession must cover the land in controversy. If it does not, the entry and adverse possession covers no more than the party occupies, if so much. If a party enters under a mistake, as if he enters upon lot No. 4, when his deed conveys to him lot No. 5, he can hold as against the owner only what he occupies.

In this case, the charter of Enfield did not cover the land in question. No entry, therefore, on this land under the charter of Enfield, could give a right by adverse possession, because the party was acting beyond his deed. There can be no legal difference between acting without any deed whatever, and acting beyond the known lines and boundaries of the deed the party actually has.

But the court told the jury that if the demandants entered under the original charter, and held the land twenty years, they were entitled to recover.

Now, we think that this is not the law of the land. If the charter had covered the land, however imperfect might have been the grant, or the right of the grantors ; or if the charter had been originally run out so as to include the premises, we should have had no controversy in regard to the instructions of the court. But we wholly deny that the party can obtain title by an adverse possession to more than he actually occupies, when his deed in no way covers the land. Between such a case and a bare naked entry without pretence of title, we can see no difference. We therefore contend that this part of the charge, so far as the jury were directed to consider the entry of the demandants under the charter of Enfield, as furnishing any evidence of a possession that could give title under the circumstances of this case, is not warranted by the law of the land.

How, then, is the law in regard to the entry and claim under the acts of the legislature ?

The court instructed the jury, that if the demandants entered upon and claimed the gore under those acts, and held it twenty years, the demandants were entitled to recover. We object to this. We say, if the gore was in Grantham by charter or by actual location, any attempt to convey the land by the state would be a nullity. There could be no land to convey, and an entry under such a grant would be no better than an entry without any grant whatever.

The acts of the legislature on the face of them only purported to grant what had not been granted before ; and as there was no gore, nothing was granted.

On both these points we cite the case of *Jackson vs. Woodruff,* 1 *Cowen* 276.

IV. The court intructed the jury, that an entry on a portion of the land, claiming the whole, was in law an entry upon the whole.

We object to this instruction, under the circumstances of the case.

The proprietors of Grantham entered immediately after

their charter, in 1767, and have been in possession of the township ever since. This entry will avail them according to their right, which was to the line running south 68° east.

Now, we say, while the proprietors of Grantham were in possession of part under a grant covering the whole, no entry can be made under an imperfect title by any one else upon any part, so as to hold by adverse claim beyond what is actually occupied.

This we say is not only the obvious common sense of the case, but the express law.

Why should an entry under an imperfect title be better than one under a perfect title?

If the true owner in possession under a perfect title will so sleep over his rights as to permit a stranger under an imperfect title to occupy any portion of land peaceably twenty years, such stranger will hold what he has occupied perhaps by adverse possession. But surely nothing beyond this. He can take nothing where the true owner is in by a constructive possession. 6 *Cowen* 677, *Jackson* vs. *Vermilyea*.

V. The charge in regard to the supposed abandonment or disclaimer of title by Grantham, we think incorrect.

There was no pretence that Grantham had disclaimed title to any thing farther than to bound certain lots on the line running south 58° east. This was not a disclaimer of title to the land lying beyond that line.

If the land was in Grantham by their charter, they could not and would not lose it by merely running a line as their boundary incorrectly, and bounding individuals on that line.

There is no pretence that there had been any mutual agreement as to the boundary between the proprietors of Enfield and Grantham.

*Perley,* for the demandants.

I. The copy from the records of the proprietors of Enfield was not evidence of a title in Johnson, without proof that the vote was passed at a regular meeting.

The statute prescribes the manner in which the meetings of the proprietors of townships shall be holden, in order no doubt to protect the rights of individual proprietors against the acts of the corporation done at meetings of which they had no legal notice. The demandants are a corporation, and can act only in the way prescribed by law.

But it is contended, that because their own record, certified by their own clerk, shows this vote, the proprietors are estopped to deny that it was passed at a legal meeting. But unless it shows that the meeting was regular, the vote does not appear to be the act of the corporation. This argument first assumes that certain persons claiming to be the proprietors, were in fact such and duly met, and shows the acts of those same persons, to prove the regularity of their meetings. If not duly met, what they recorded as well as what they voted was entirely void. The certificate of the clerk shows nothing but the fact that there is such a record.

Nor are the record and certificate *prima facie* evidence. The statute provides, that the clerk shall give copies to all persons on request. The tenant then had the same control of the records, and the same means of showing the whole, as the demandants; and if he shows only a part of the proceedings, when he has the power to show the whole, the presumption is, that the proceedings are defective. When a party claims against a corporation, he must show affirmatively that the proceedings of the corporation have been regular and according to their corporate powers. 2 *Johnson* 109, *Beatty* vs. *The M. I. Company;* 5 *N. H. R.* 301, *The Bank* vs. *Woodward;* 10 *Pick.* 326, *Thayer* vs. *The M. M. F. I. Company.*

If the tenant had claimed title himself directly under this vote, he would be held to show a regular meeting; much more, then, when he claims nothing in himself, but undertakes to show seizin in a third person.

II. If the vote of the proprietors passed the land to Johnson, his deed reconveyed it.

1. The tenant undertakes to show title in Johnson. The deed is good against Johnson, the grantor, without recording, and rebuts the defence of title in him.

2. The case does not call upon the demandants to show that they have capacity to take lands without the limits of their grant. But if there had been a division of their own lands, could not the division be rescinded by consent, and the land revert to them as before ? What was done in this case amounts to the same thing ; the form of the transaction for this purpose is immaterial. 4 *Pick.* 156.

3. The law presumes an acceptance of an unconditional grant of land. The deed was delivered to the clerk, and remained in his custody until the demandants produced it in court and claimed under it, in this action. This is a ratification of the act of the officer in receiving the deed.

III. As to the disclaimer by Grantham, and the entry and claim by Enfield, as stated by the judge in the charge.

1. Under the original charter. If the land in controversy was a gore not granted by the original charter to Enfield or Grantham, the subsequent grant of the legislature gave the land to Enfield.

But if, as the tenant maintains, all the land was already granted, and nothing left for the legislature to grant, the only question that could arise between Enfield and Grantham under their charters, would be one of boundary—that is, where the line between them should be.

There was undoubtedly a mistake as to the course of the line in one of the charters or the other ; and it was certainly competent to the parties to establish a line between them, to which they would be bound. And if one of the parties should fix a line as the boundary, and claim and occupy up to that line, and disclaim beyond it, and the other should enter, claim and occupy up to the same line, and all this should continue twenty years without disturbance, is it to be doubted that the parties would be bound forever by the line so established ? Such acts of the parties would amount

to a location of their respective grants by mutual consent; and we apprehend the judge was clearly right in his direction, that after an acquiescence and possession for twenty years, according to the line so fixed, the boundary could not be disturbed. 3 *John.* 12, *Jackson* vs. *Dillenback; ibid.* 269, *Jackson* vs. *Dieffendorf; 7 John.* 240; 9 *ditto* 100, *Jackson* vs. *Smith;* 11 *ditto* 123 *and* 163; 9 *Pick.* 520, *Owen* vs. *Bartholomew.*

But at all events the demandants shewed a seizin in fact which was enough to entitle them to recover against the tenant who set up no title, and which was not disproved by showing a title in Grantham. 3 *N. H. R.* 274, *Bailey* vs. *March.*

2. If the proprietors of Enfield entered under the grant of the legislature, the instructions to the jury were right.

The legislature, by the act, established the line by metes and bounds, " beginning at the bound commonly called ' Sumner's bound, and running south 58° east, to a hemlock ' tree marked H. G., W. C."

This certainly gave color of title to the demandants. 5 *N. H. R.* 282; 3 *ditto* 27 *and* 51; 4 *ditto* 375; 2 *Green.* 178 *and* 275; 5 *ditto* 204.

IV. The entry of the demandants into the disputed tract being publicly made under a grant from the state, and the largest part of the land having been held by them, claiming to hold under a title for many years, such entry and possession gave them seizin of the whole tract, although it was a large tract; as it gave sufficient notice to all the world of the nature and extent of the claim.

RICHARDSON, C. J., delivered the opinion of the court.*

This case has been very forcibly and pertinently argued on both sides, and the grounds taken very clearly and plainly stated. I shall in the first place examine the exceptions

---

* PARKER, J., having been of counsel, did not sit.

which have been taken to the instructions which were given to the jury.

The jury were in substance instructed, that if the proprietors of Enfield entered upon and claimed the land in dispute, under their original charter, and held peaceable possession for more than twenty years, no claim being made during the time by the proprietors of Grantham, but all title disclaimed, in that case the demandants were entitled to recover. And that an entry into part was in law for this purpose an entry into the whole.

To this it is objected, that as the original charter did not cover the land in dispute, the entry under the charter was without color of title, and so no right could be acquired by adverse possession under such an entry.

To this it is answered, that it was competent to the proprietors of the two townships to settle the line by agreement, and that the evidence was sufficient to prove such an agreement. It is also said, that the evidence was sufficient to show that the demandants were in fact seized, which was enough under the circumstances as against this tenant.

Neither of these answers meets the objection. With respect to a seizin in fact which would be good as against this tenant, the cause was not put to the jury at all on that. It does not appear that it was even suggested by counsel on the trial. The court in the charge to the jury said nothing on the subject. The question whether the demandants had such a seizin, was a question of fact, to be settled by the jury under the direction of the court; and as the fact has not been thus settled, we cannot now sustain this verdict on the ground that the demandants had such a seizin. Whether the demandants had such a seizin is a question that has not been tried. It is thus manifest that this answer does not meet the objection.

It is without doubt true that the proprietors of the two townships were competent to settle the boundary line between them; and if they at any time made an agreement

which settled the line, they were bound by it. But whether they had made such an agreement was a matter of fact to be left to the jury. Possession up to the line is not such an agreement. Disclaiming all beyond the line is not such an agreement. These are only evidence from which a jury may infer an agreement. It is manifest that the question whether there had been such an agreement was not submitted to the jury. It does not appear that the question was even suggested to the court by counsel. The ground taken by the demandant's counsel at the trial seems to have been that there had been an adverse, undisturbed possession of the premises under the original charter, for more than twenty years; and the court very properly instructed the jury that if there had been such a possession, the demandants were entitled to recover. It is, then, apparent that no answer to the tenant's objection, drawn from any supposed agreement establishing a line meets the tenant's objection to the charge; for the question whether there was such an agreement, still remains to be tried.

The objection to this part of the charge, then, remains unanswered, and seems to us to be unanswerable. It is clear that the original charter does not cover the land, and any possession of the land in dispute under that charter is clearly without even color of title. And it is well settled, that such possession is no evidence of right. 3 *N. H. R.* 23 *and* 49.

Where one who had a deed of lot No. 4, took possession of lot No. 5, adjoining, believing it to be his lot and claiming it as such, it was held that he could not establish an adverse possession of the whole by actual improvement of a part, because no part of lot No. 5 was included in the deed. 1 *Cowen* 286.

A possession under a claim of title derived from a source which on the face of it appears not to be a legitimate source of title—as a grant by a foreign government—cannot be deemed adverse. 12 *Johnson* 365, *Jackson* vs. *Waters.*

As it was left to the jury in this case to find a title in the

demandants founded upon a possession of the premises for twenty years under the original charter, which did not include the land, this furnishes a good reason for granting a new trial without adverting to the other grounds stated by counsel.

*New trial granted.*