## CLOUGH *vs.* BOWMAN.

Parties whose lands join may agree upon a dividing line between them by parol, and establish monuments, and this will bind them until they make a subsequent agreement. But possession up to a line which it appears was established for temporary purposes only, is not evidence of title.

Where there are two or more monuments either of which may be that designated in a deed, parol evidence is admissible to show which is the one intended. But this may be settled by a farther description in the deed, showing which is the true boundary.

When other means of ascertaining the true construction of a deed fail, and a doubt still remains, that construction must prevail which is the most favorable to the grantee.

If the first part of the description in a deed is complete in itself, but farther matter of description is added which modifies or controls what precedes it, the latter part is not to be rejected as repugnant; but the whole language of the deed is to be construed together, if it may be, in order to ascertain the true construction.

Where, in a deed of land, a reference is made to another deed as recorded in a particular book and page of the registry, for a description, a copy of the record of that deed is admissible in evidence in connection with the deed in which the reference is made.

Where the description of the premises conveyed in a deed is sufficiently certain by reference to other deeds and monuments existing when those deeds were made, evidence that the grantor, when he executed the deed, pointed out a monument as the boundary, which was not the true one, would not amount to a practical location, nor limit the operation of the deed to the monument thus pointed out, there being no agreement or assent on the part of the grantee.

If the language of a deposition is so uncertain that the meaning of the statement cannot be ascertained, that part of the deposition is inadmissible in evidence.

The statute requires that notice should be given to the adverse party, not only of the time and place, but before whom a deposition will be taken. It is not sufficient to give notice that it will be taken before one of two magistrates.

If the deposition of a witness were erroneously rejected, and the party should subsequently procure the attendance of the witness, and avail himself of the benefit of his testimony upon the trial, the rejection of the deposition would not furnish ground for a new trial.

TRESPASS, for breaking and entering the close of the plaintiff, in Lyman, on divers days between the 1st Nov., 1840, and the 22d March, 1841, being that part of lot No. 34, bounded northerly and westerly by the lines of the lot, easterly by Solomon P. Miner's land, and southerly by a line running from the westerly line, along a log fence and stump, to Miner's land.

Plea, the general issue, with a brief statement that the close was the soil and freehold of the defendant.

It appeared in evidence that the plaintiff was the owner of the northerly part of lot 34, and the defendant of the southerly part, and the question was where the dividing line between them was situated.

Prior to April 25th, 1827, one David Stickney, being the owner of the lot, had made a contract with Daniel Stickney to sell him the northerly part, and Daniel went into possession but had obtained no conveyance. On said 25th of April Ira Goodall, having obtained a judgment against David Stickney, proceeded to levy his execution, and Daniel Stickney having no deed, an arrangement was made between him and Goodall by which Goodall extended his execution upon the whole lot, it being agreed that he should convey the northerly part to Daniel, on receiving a small sum from him. This was done on the same day, the boundary on the dividing line being on and in the line of a rail fence, which had been subsequently taken away and about the position of which there was contradictory testimony. The plaintiff claimed title from Daniel Stickney, through a deed executed by said Daniel to Jonathan Moulton, jr., Oct. 1st, 1832.

On the tenth of March, 1830, Goodall having released the south part to Daniel Stickney for that purpose, Stickney conveyed that part to Theodore Dyke, by the following description, to wit : " all that part of the right of land, situated in said Lyman, numbered thirty-four, that lies south of the log fence, down south of my house, being all the same that I deeded to Ira Goodall, April 25, 1827, as recorded May 23d, 1827, lib. 104, fol. 186, and covering all that was set off to said Ira on his execution against David Stickney, in April, 1827, and all the rest of said right south of that levy." On the 27th of June, 1831, Dyke conveyed the south part to Robert Clough, by a similar description ; and on the 9th of November, 1835, Robert Clough conveyed to Hiram and Jaffrey Clough, describing the land substantially in the same manner ; and Hiram and Jaffrey Clough, on the 6th of April, 1838, conveyed to the defendant " all that part of the right of land in Lyman, No. 34, that is south of the log fence,

down south of Zacheus Clough's barn, being all the same land that Robert Clough deeded to us, Nov. 9, 1835, and conveying all that was set off to Ira Goodall on his execution against David Stickney in April, 1827." Zacheus Clough, the plaintiff, at this time lived in the house on the northerly part of the lot, which, on the date of the deed to Dyke by Daniel Stickney, was occupied by the latter.

The defendant having introduced this evidence, offered an office copy of the deed from Daniel Stickney to Goodall, referred to in the deed from Stickney to Dyke, and the two subsequent deeds, for the purpose of farther showing the description and boundaries of the south part of the lot. The plaintiff objected that said deed not being in the chain of title of the defendant, the original should be produced, but the court overruled the objection, the deed through which the defendant claimed having referred to this record for a farther description.

The deed from Stickney to Moulton, before referred to, dated October 1st, 1832, and through which the plaintiff derived his title to the north part, described the premises conveyed as bounded south by land owned by Robert Clough.

There was evidence tending to show that, when the levy was made in 1827, there was a log fence nearly in a line with the rail fence mentioned in the deeds between Goodall and Stickney, dated April 25th, 1827, but which did not extend across the whole lot; and the defendant claimed to the place where that fence was situated. That fence was burnt up, or otherwise destroyed, some time after, but the remains of part of it were visible up to the time of the trial.

After Stickney conveyed the south part to Dyke, in 1830, bounding him on the log fence south of Stickney's house, another fence was erected by Stickney and Dyke farther south, made of logs and poles, and connected with brush fences, extending farther westerly towards the line of the lot; but there was evidence to show that the parties did not suppose when this was erected that it was placed precisely on the line, and regarded it as a temporary fence. It was repaired, however, from time to time, and was standing when Hiram and Jaffrey Clough conveyed to the defendant.

The plaintiff claimed to this fence, and requested the court to charge the jury that the deed to the defendant bounded him on the log fence which was then standing; but the court directed the jury that the farther description in the deed to the defendant, in connection with the description in the preceding deeds, entitled the defendant to the land lying south of the log fence existing at the time of the levy and of the conveyance to Dyke; that the defendant was entitled to all the land which was conveyed to Robert Clough, in June, 1831, and the plaintiff bounded by that; and that a fence erected after that, and which was not agreed to by the parties as a boundary, would not limit the defendant's title to that fence, and that the question was, which log fence was intended in the boundary in the deeds from Stickney to Dyke in 1830, and from Dyke to Robert Clough in 1831.

The plaintiff offered in evidence the deposition of Robert Clough, containing the following paragraph: " While Gordon was in possession, Gordon and myself used to repair the log fence as the line between us, and I never claimed to own any higher up than the log fence : *when I sold to the Cloughs I pointed out to them to hold as high as that log fence and no higher.*" The log fence thus referred to was the one to which the plaintiff claimed, and the defendant objected to the last sentence. The court did not regard it as evidence that the witness actually showed the fence as a boundary, and for that, as well as other reasons, rejected the evidence.

The plaintiff offered the deposition of Daniel Stickney. The defendant did not attend when it was taken, and it appeared that the notification served on him stated that depositions would be taken before one or the other of two justices of the peace named in the notice. The defendant for this reason objected to the deposition, and the court rejected it. The plaintiff afterwards procured the attendance of the witness in court, and he was examined.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Goodall* and *Morrison,* for the plaintiff. We call attention,

Clough *v.* Bowman.

first, to the charge as to the construction of deeds. The question is, on the construction of the deed from Hiram and Jaffrey Clough to the defendant, dated April 6th, 1838, who is entitled to what that deed gives him? The charge of the presiding judge means either that the fence described in the deed to Dyke is to be adopted as the boundary, although it may be different from the fence mentioned in the deed to the defendant, or that the fence referred to in both deeds is the same fence.

What log fence was intended as the boundary in the deed from the Cloughs to the defendant? The defendant can hold no land north of it. If it can be found, it must govern. The deed to the defendant conveys all the land set off on the execution that is south of the log fence. The words in the closing part of the description are, " all that part of said right south of the log fence." That part of the deed referring to Robert Clough's deed and to the set-off is inconsistent and should be rejected if we are wrong.

The latter clause is to be rejected where repugnant to the former. 9 *N. H. Rep.* 132; 3 *Pick.* 272; *Shep. Touchs.* 88. The first clause of the description refers to that land south of the log fence. This is enough to convey the estate. Now a subsequent description inconsistent with it must be rejected.

The less certainty yields to the greater. A boundary on a fence is more to be relied on than the other description.

A fence is a monument and must govern.

A reference to another deed cannot control the previous description. A purchaser looks to words of description rather than to the source from which the grantor derived his title. 18 *Pick.* 553; 5 *Mason* 410; 7 *Greenl.* 366; *Stearns* vs. *Rice*, 14 *Pick.* 411, shows that reference to a previous deed cannot control words of description.

What fence was meant by the deed to the defendant? " Log fence down south of Z. Clough's house." This cannot be applied to the fence to which the plaintiff claims. The defendant's fence was not standing at the date of the deed. But the plaintiff's fence was, and was the only fence. Reference to local objects is to such objects as existed at the time the deed was made.

Clough *v.* Bowman.

If it is applicable to either fence, then it is a question for the jury which fence was meant. 2 *N. H. Rep.* 373, *Claremont* vs. *Carlton ;* 13 *Pick.* 261; 13 *Maine* 113; 5 *Greenl.* 496.

The question is, not what fence was intended in the deed to Dyke, but which was meant in the deed to the plaintiff.

The deed from Stickney to Goodall was not in the defendant's chain of title. It is not admissible unless it be ; or unless it be shown that that deed was lost or destroyed.

As to the rejection of Stickney's deposition : It is said that the notice does not show which justice was meant. It is in the alternative. It has been the practice to give notice in that way.

As to the rejection of the testimony of Robert Clough, his words were, " I pointed out to them to hold as high as that log fence and no higher."

Now, though no monuments are mentioned in a deed, still if the parties go on the ground and point one out, it governs. 19 *Pick.* 445 ; 13 *Pick.* 267.

*Hibbard,* for the defendant. The question for decision was one of boundary. The case turned on the titles, no agreed fence being proved. Both went back to Daniel Stickney. The defendant's deed was oldest. The plaintiff's deed gave no boundary. At the date of the deed from Stickney to Dyke, March 10, 1830, the fence to which the plaintiff claims did not exist, that is, his brush and pole fence. The only fence was the remains of an old log fence. The fence then meant must be one actually existing at that time. The conveyances transfer all the land up to the log fence to which the defendant claims. What land did Robert Clough own in 1832 ? The fence was not built as a boundary, but as a transient fence to keep out cattle.

Stickney conveyed land to Moulton which he had before conveyed to Dyke, so that if the defendant does not own the land, the plaintiff has not got it.

The copy of the deed from Stickney to Goodall was rightly admitted. The defendant refers to the deed in his chain of title. The paper referred to becomes a part of the description. The deed is referred to as recorded.

The sentence in the deposition of Robert Clough was rightfully rejected. It was too loose to be competent evidence of a statement of fence as a boundary. He does not say that he could hold as high as that. If the sentence in the deposition had been admitted, and he had pointed out a wrong boundary, could that preclude us, when this would be against the whole tenor of the descriptions in the deeds ?

The deposition of Daniel Stickney was rightfully rejected on account of a defect in the notice. The statute says that the notice should contain the name of the justice. But it does not appear which justice was to take the deposition.

PARKER, C. J. In order to ascertain the true construction of the deed from Hiram and Jaffrey Clough to the defendant, it may be expedient to trace the title under which the parties both claim.

Daniel Stickney may be regarded as having been the source of title to the whole of lot 34. David Stickney was the owner of that lot. Goodall levied, and conveyed the north part to Daniel Stickney. He afterwards conveyed the south part also to Daniel in order that he might convey to Dyke, so that both parties claim title under Daniel Stickney. The previous levy and deeds are material only as they furnish materials by way of reference, to ascertain the divisional line between the north and the south part of the lot. Daniel Stickney, then, in 1830, conveyed the south half of the lot to Dyke, bounding him on the log fence south of his house. At this time there was a log fence there in the line of the rail fence described in the levy. There was then no other fence there. The one to which the plaintiff claims was erected afterwards. Dyke took the south part, bounding on the only fence then existing, which is the line to which the defendant, holding under him, claims. That fence was burnt, sometime after the levy made in 1827. The precise time does not appear from the case, but the remains of it were visible at the time of the trial.

After the conveyance to Dyke, Daniel Stickney and Dyke erected another fence, which appears to have been for temporary

Clough *v.* Bowman.

purposes. There is evidence to show that it was understood not to be on the line, and was not to be regarded as the boundary. The erection of this fence, then, did not alter the title or boundary line between the parties who erected it. Parties whose lands join may agree upon a dividing line between them by parol and establish monuments, and this will bind them until they make a subsequent agreement. 9 *N. H. Rep.* 473, *Gray* vs. *Berry ;* 6 *N. H. Rep.* 107, *Sawyer* vs. *Fellows ;* 12 *N. H. Rep.* 27, *Prescott* vs. *Hawkins.* But possession up to a line which it appears was established for temporary purposes only, is not evidence of title. 7 *N. H. Rep.* 457, *Enfield* vs. *Day.*

Dyke in 1831 conveyed to Robert Clough. The description in this deed, according to the case, was similar to that in the deed of Stickney; that is, by part of the description it bounded Clough on the log fence south of Stickney's house. There was at that time a log fence there, erected for temporary purposes, and the remains of another. This was a circumstance to lead to enquiry on the part of the purchaser, and might raise a question for a jury. Where there are two or more monuments, either of which may be that designated in a deed, parol evidence is admissible to show which is the one intended. 2 *N. H. Rep.* 373, *Cleaveland* vs. *Carlton ;* 13 *Pick.* 261, *Waterman* vs. *Johnson ;* 5 *Greenl.* 496, *Linscott* vs. *Fernald ;* 13 *Maine* 114, *Wing* vs. *Burgis.* If the description had stopped here, the fact that Dyke owned to the remains of the old log fence, and the improbability that he could have intended to convey to the other, only reserving a small narrow strip of land lying between the two, would be a circumstance to show what log fence was actually intended by that deed. But this is only part of the description. It proceeds to give the farther description, being all that Daniel Stickney deeded to Goodall, April 25, 1827, and all that was set off to Goodall on his execution against David Stickney. Here are two other particulars by which to ascertain the land conveyed. Both of them go to show that the log fence referred to was the old log fence, and to fix that as the true boundary. It appears, then, that Robert Clough owned the south part of the lot to the line to which the defendant claims.

In this state of the case, in 1832, Daniel Stickney conveyed the north part to Moulton, under whom the plaintiff derives his title. The particular description by which that conveyance was made bounded Moulton on the south by land owned by Robert Clough. Daniel Stickney had not then any title south of the line of the old log fence, which stood in the line of the rail fence mentioned in the levy, and he could not, therefore, convey any thing beyond that to Moulton, and did not attempt to do so.

If the log fence erected by Dyke and Stickney had been agreed upon as the dividing line between them, Stickney, by his deed to Moulton, might have conveyed to the line thus established; but the evidence showing that this was not only not so, but that it was expressly understood to be a temporary fence not on the line, no title could pass to him beyond the old log fence, Robert Clough owning to that.

There is nothing in the case to show any change of title in the conveyances of the north part, or any extension of boundary ; and it would seem, therefore, that the plaintiff could not have a title to the strip of land between the fences, which is the land in dispute, even if the defendant has it not.

But the defendant does not rely merely upon the want of title in the plaintiff to the strip of land in controversy. He claims title in himself, and this position is sustained by the rulings and instructions in the case. It becomes necessary, therefore, to examine the subsequent deeds under which the defendant derives and holds his title.

Robert Clough, in 1835, conveyed the south part of the lot to Hiram and Jaffrey Clough, describing the land substantially in the same manner as it was described in the deed to him. There seems then to be no good reason why the same land should not pass.

If there had been but one log fence there, (and that the temporary fence erected by Stickney and Dyke,) the particular description that the land intended to be conveyed was all the land conveyed by Daniel Stickney to Dyke and all embraced in the levy of Goodall, would seem to have controlled that particular of the description. 5 *N. H. Rep.* 58, *Tenney* vs. *Beard;* 5 *N. H.*

*Rep.* 536, *Barnard* vs. *Martin;* 7 *N. H. Rep.* 241, *Woodman* vs. *Lane.* But when, in addition to this, we find that there were the remains of another log fence still visible, that the log fence had been the boundary there in the chain of title from a period before the new fence was erected, there seems to be no rational doubt of the true construction. One particular is ambiguous; that is, which log fence was intended. There are two other particulars which make it certain, viz : the levy, and the deed from Daniel Stickney to Dyke.

This settles this part of the case. The deed to the defendant is quite as clear in its reference to the levy ; and it refers also to Robert Clough's deed, which refers back to the deed of Stickney to Dyke. If it was still a matter of doubt what log fence was intended, the settled principle is, that when other means of ascertaining the true construction of a deed fail and a doubt still remains, that construction must prevail which is most favorable to the grantee. 5 *N. H. Rep.* 58, *Tenny* vs. *Beard;* 10 *N. H. Rep.* 305, 311, *Cocheco Man. Co.* vs. *Whittier and cases cited;* 5 *Met.* 15, *Melvin* vs. *Prop'rs of Locks and Canals, &c.*

The argument that the description of the premises in the deed to Jaffrey and Hiram Clough is complete in the first part of it, and that what follows is repugnant and must be rejected, cannot be sustained. The whole language of a deed is to be construed together, if it may be, in order to ascertain the true construction. And thus construed the whole description here is consistent.

If there were, in fact, two log fences existing at the time of the deed from Stickney to Dyke, as suggested by the counsel, the case would only be less strong. The result would seem to be the same. There would, then, be the other matters to show that the log fence claimed to by the defendant was the true one ; and the construction must be most favorable to the grantee.

The objection to the admission of the copy of the record of the deed from Stickney to Goodall cannot prevail. That deed is not, strictly speaking, part of the chain of title ; although, by the reference to it in the deed from Stickney to Dyke and in the subsequent deed, it became a part of the description of the premises. Of itself, however, it passes nothing to the defendant. But the

reference to the deed and the record of it, makes either the deed or the record competent evidence, in connection with those deeds, to ascertain the premises conveyed in them ; the record being referred to, it possesses as much verity for this purpose as the original. 20 *Pick.* 121, 123, 124, *Foss* vs. *Crisp.*

There are two objections to that part of the testimony of Robert Clough which was ruled out. In the first place, the language is too uncertain to show what he did which formed the subject matter of that part of his testimony : " When I sold to the Cloughs, I pointed out to them to hold as high as that log fence, and no higher." He may have shown them that as the boundary, but he does not say that he did. How he pointed out to them to hold, does not appear. He may have made a declaration that they would hold to the log fence he speaks of, which would be inadmissible. If the language of the deposition is so uncertain that the meaning of the testimony cannot be reasonably determined, it should not be sent to the jury that they may guess at what the witness intended. But, if this clause were construed to mean that he pointed out that log fence to them as the boundary of the land, although it would be inadmissible in some cases, it could not be admitted to control the description in the deed, which, we have seen, shows the true boundary to be the other log fence. Such a pointing out of a particular object as the boundary cannot constitute a practical location of the tract conveyed, contracting the operation of the deed ; especially when it sufficiently appears, as in this case, that the grantor's title extended farther, and that he intended to convey what had been conveyed to him ; and the language of his deed is broad enough to cover what he thus owned. His deed describes the land substantially as it had been described in the former deeds. If he was mistaken as to his boundary, and pointed out a wrong one, that could not control and restrict the operation of his deed. The testimony does not show any assent on the part of the grantees, or any thing that could be construed into an agreement to fix the boundary in that place, and thus to bring the case within the principle of *Waterman* vs. *Johnson*, 13 *Pick.* 261.

There are two answers also to the exception founded upon the

Clough *v.* Bowman.

rejection of the deposition of Daniel Stickney. The notice was not such as was required by the statute, which requires that the name of the justice before whom the deposition is to be taken shall be stated in the notice to the adverse party. The knowledge which the party thus acquires may determine the question whether he will attend or not. It is not sufficient, therefore, to give him notice that the deposition will be taken before one of two individuals. If the names of two magistrates might be inserted in this way, there is no limit, and the names of twenty might be stated. The ruling, therefore, was correct.

But, if the exception to the notice had been insufficient, and the rejection of the deposition erroneous, the plaintiff afterwards produced the witness, and he was examined. Testimony on the stand is sometimes regarded as less exceptionable than a deposition. Where the deposition of a witness has been taken to be used at the trial, but, at the time of the trial, the witness is in court and is called to the stand, the uniform practice is to exclude the deposition.

As the plaintiff had the benefit of the testimony of the witness, his exception comes to this, that, by the rejection of the deposition, he was put to the trouble and expense of procuring the attendance of the witness. But this would not entitle him to a new trial, even if it were in consequence of the erroneous ruling of the court. If a party takes an exception to a deficiency of evidence on the part of his adversary, which is, in fact, well founded but is erroneously overruled, and he afterwards supplies that deficiency by testimony produced by himself, he thereby waives or overrules his exception.

*Judgment on the verdict.*