### P. P. FURBER *vs.* CHARLES HILLIARD.

**Persons,** whose names are alleged to have been forged to a bank bill, are now competent witnesses to prove that fact, though the rule was once otherwise.
But to prove that fact it is not necessary to call either them or those who have seen them write; persons are competent to prove it, who have before seen genuine bills of the same bank and are skilful in the detection of counterfeit money.

THIS was an action of assumpsit in two counts, one for money had and received, and one for goods sold and delivered.

At the trial here in February, 1822, on the general issue, it appeared in evidence, that the plaintiff had sold to the defendant a certain quantity of leather of the value of nine dollars, and that the defendant gave him in payment a ten dollar bill, purporting to have been issued by the Auburn

Bank in the state of New-York, and received the difference in money.

The plaintiff then offered to prove, that the above bill was counterfeit; but the persons called for that purpose, not being officers of said bank, and not having seen counterfeit bills on it of this denomination, though they had of other denominations, and were persons much accustomed to the inspection of money, they were objected to by the defendant.

The court, however, admitted their testimony, and a verdict having been found for the plaintiff, a motion was made for a new trial, on the ground that their testimony was incompetent.

*Eastman*, counsel for the plaintiff.

*Pearson* and *Mason*, for the defendant.

WOODBURY, J.　In this state it has long been a practice in cases like the present, and also in the trial of indictments for forgery, to admit such evidence as was here offered to prove the badness of the bills in dispute.

This practice probably originated from the circumstance, that the supposed signers of the bill, who would seem to be the best witnesses on such an occasion in respect to their own hand-writing, were long held to be incompetent on account of their imputed interest in the event of the trial.　4 *East* 582.—*Salk.* 172.—1 *Leach C. C.* 10, *and other auth. passim.* Or perhaps on the ground, that the instrument if proved to have been forged was cancelled or " impounded" by the court, so that no action could afterwards be sustained upon it.　*Tidd* 528.—*Shep. T.* 70, 71.—2 *East Cr. L.* 994.—3 *Mass. Rep.* 84, 86.—1 *Root* 534, &c.—5 *Coke* 74, 75.

But though that rule has now ceased, and the signers are competent,(1) our practice remains unchanged to call other persons to prove or disprove the signature, and to consider them no less competent than the signers.

On the part of the defendant, however, it is said to be a further departure from general principles, to admit a third person to testify as to the genuineness of the bill who has not seen the signers write.　Undoubtedly those, who have seen them write, are the best informed to testify as to the

(1) 4 John R. 296, 302.—1 Dallas, 111.—2 do. 239.—3 Mass. R. 84.

61

mere signature, and are in most cases called for that purpose.  1 *Phil. Ev.* 169.—2 *East Cr. L.* 1000, 1002.

But a knowledge of the genuineness of a signature acquired in any other way, is sufficient to enable a witness to testify with intelligence and safety on this point.

A case often stated in the books is where the witness has been a correspondent of the signer, and thus seen his signature under such circumstances as to remove all doubt concerning its genuineness.  *Bull. N. P.* 235.—1 *Bl. Rep.* 384, *Gould vs. Jones.*—4 *Es. Ca.* 273, *note;* 123, *Rex vs. Castor.*—2 *John. Ca.* 214.*

It has also been allowed in England to prove by those accustomed to the examination of money, that the paper appeared to be of the quality used for bills or not, the type similar or unlike, the style of engraving the same or otherwise, the signatures stiff and imitated, or easy and natural. 2 *East. Crown Law* 1002, *McGuire's case.*—4 *Es. Ca.* 1269, 273, *note.*

This evidence, though not always conclusive, is certainly relevant, and sometimes will be more likely to convince a jury than the bare testimony of an individual who had once seen the president and cashier write.  The only objection to its competency is, that better evidence of the fact of forgery exists and should therefore be produced.  But this objection rests on a partial misapprehension of the true rule as to better evidence.  It means sometimes evidence higher in degree, and not stronger evidence of the same degree or character.  *Peake Ev.* 6.—*Gilb. Ev.* 5, 4.

Thus where a fact can be proved by a record, the record is in general better evidence than a deed; so a deed than a writing unsealed; a writing unsealed, better than parol testimony; and parol testimony of a subscribing witness, better than that of a person not particularly called to see and attest to any transaction.

But among different circumstances and facts in *pais* to convince a jury of a particular fact, the party may rely on any one he thinks proper; and it is for the jury alone to be

---

* 19 John. Rep. 135.

satisfied with that one alone or give their verdict against him unless he produce additional evidence, which they may suppose to be in his power. It must be a very strong case to justify the court in interfering and requiring the party to produce more evidence of the same degree. In 1 *Phi. Ev.* 169, the very case is suggested under this head, that it is not " necessary to call the supposed writer of an instrument " for the purpose of proving or disproving his hand-writing."

The plaintiff in this case put witnesses on the stand, who had before seen bills on this bank which passed current and were reputed to be genuine, who recollected their appearance and the character of the hand-writing, and who had a particular acquaintance with paper money. True, they had not seen the officers of the bank write, which as before remarked is usually required : but they had seen what passed unquestioned in business as their hand-writing. They gave their opinions to the jury, and the facts on which their opinions were founded ; and being uncontradicted, the jury were satisfied.

It is to be remembered, that the defendant can in all these cases himself produce the actual signers of the bill, or persons who have seen them write, and contradict, if false, this *prima facie* evidence. If surprised by the testimony of others, we should always indulge him with time to procure the attendance or deposition of the officers of the bank.

As they often reside at great distances, as these cases are frequent, and as the fact of the badness of the bills is seldom contested with seriousness, we think the present practice much the most convenient, and having long existed, are not now disposed to change it.

*Judgment on the verdict.*