## Clement & a. *vs.* Hadlock.

By an agreement made between the plaintiffs and H., the plaintiffs were to purchase a certain quantity of hides, and deliver them at the tannery of H., and he was to tan them at his own expense, being answerable for all damage the hides should sustain while they remained in his care; after which the plaintiffs were

to send them to market, and sell them at their expense, and H. was to have one half of what the hides should bring more than the original cost of them ;—*Held*, that this agreement did not constitute a partnership between the parties to it ;— *Held*, also, that a subsequent agreement, that each party might use such portion of the leather as he desired, keeping an account of it, did not change the case in this respect.

By another agreement, the parties afterward submitted all matters in difference between them to arbitrators, and agreed that the plaintiffs should take all the hides then on hand, and account for them at a price to be determined by the arbitrators ; and that if a balance should be found due to H., he should receive it out of the leather. The arbitrators found a balance of between two and three dollars due to him, and the plaintiffs then tendered to him one of the hides, valued at three dollars, in payment, which he refused to receive ;—*Held*, that the plaintiffs might afterwards maintain an action of trover against a third person, who took and converted the hides by the direction of H.

After an award is duly made and published, it is too late for either party to revoke the submission, without the consent of the other. And a declaration by one party, that he will not be bound by the award, is then of no avail.

It is not a sufficient objection to a deposition, that the body of it was drawn up by the deponent, before he came to the place of caption, if there be no other reason for a suspicion of undue influence.

If a deposition be copied, in a material part, from an affidavit previously sworn to by the deponent, but drawn up by the party taking the deposition, it will be rejected.

TROVER, for forty-seven sides of sole leather.

It appeared that on the first day of October, 1836, one Ebenezer C. Hadlock agreed with the plaintiffs, that he would tan for them two tons of dry hides into sole leather, for one half of what the hides would bring more than the plaintiffs paid for them in Boston. The plaintiffs were to buy the hides in Boston, and deliver them at E. C. Hadlock's tannery, in Lyman, take the leather there, freight it to market at their own expense, and E. C. Hadlock was to be at every other expense about it. He agreed to tan them in a workmanlike manner, as soon as it could be done, and he was to pay all the damages, if any, while the hides remained in his care.

The plaintiffs offered evidence tending to show, that in the spring of 1838 the tannery was burned, and in the following summer the parties to the contract agreed to submit to the decision of arbitrators how they should settle all the

matters relating to the hides; the plaintiffs taking the leather then on hand, as it then was.

They appeared before the arbitrators, produced the written contract, and agreed that in the settlement the plaintiffs should take all the hides then on hand, and account for them to Hadlock at a price to be determined by the arbitrators,—that the hides should then belong to the plaintiffs,—that whatever hides before that time had been received by either party should be charged to each respectively,—that Hadlock should be charged with whatever damage had been sustained by the plaintiffs, by his neglect to tan the hides in proper season,—that the arbitrators should also consider and award upon all other claims which either party might have against the other,—and that, if a balance was found due to Hadlock upon an adjustment of all claims, he should receive it out of the leather, then in the possession of Henry Moore.

The hides were, at the time of the submission, in an unfinished state, at the tannery of Moore, who had taken them to finish tanning them.

The arbitrators, after hearing the parties and charging each according to the agreement, found between two and three dollars balance due Hadlock; and the plaintiffs then tendered him, out of the hides, one valued by the arbitrators at three dollars; which he refused to take, and said he would not abide by the award. At this time there were one hundred and forty-nine hides at Moore's tannery, including the one tendered to E. C. Hadlock. The plaintiffs afterwards took away one hundred and one of the hides; and there was evidence tending to show that the defendant, who is the father of E. C. Hadlock, took or assisted in taking away the remainder, and afterwards disposed of them.

The defendant offered E. C. Hadlock as a witness, whose testimony tended to show that before the submission the plaintiffs asked him if he did not wish to alter the agreement, so that they could use their part of the leather here, instead of sending it to Boston, and E. C. Hadlock could also use his

part ; to which he assented, and it was agreed that each might use such portion of the leather as he desired, keeping an account thereof.

Upon this evidence, the defendant contended that the agreement in writing constituted a partnership between the parties, as to the subject matter of the agreement,—that the parol agreement between E. C. Hadlock and the plaintiffs, before the submission, altered the original contract, so as to authorize E. C. Hadlock to dispose of the hides as he pleased,—that the award was not binding upon him, because, after it was published to the parties, he declared that he would not be bound by it,—and that he might lawfully dispose of the hides to the defendant, who would then have a right to retain them.

The court instructed the jury, that the written agreement did not constitute a partnership between the parties to it ; and that they could not, under the agreement, dispose of the hides here, except by mutual consent ;—that they might, however, waive the provisions of the agreement, and agree that each should take such portions of the hides as he wished, and account therefor, as the defendant contended was done ;—that they might afterward submit all matters, according to the evidence of the plaintiffs, and an award of the arbitrators would be binding upon E. C. Hadlock, notwithstanding he declared he would not be bound by it, after it was published to the parties ;—that if the jury believed that such a submission and award were made, the property in the hides was in the plaintiffs after the award, and they might maintain an action for the conversion of them.

Upon the trial certain depositions were offered by the plaintiffs, the bodies of which were written by the witnesses themselves before they came to the place of caption, to which the defendant objected, but they were admitted.

A deposition was also offered by the plaintiffs, which was in part copied by the deponent from an *ex parte* deposition previously given by him, which former deposition was written by one of the plaintiffs. This was objected to by the defendant, but admitted.

The jury found a verdict for the plaintiffs, and the defendant moved for a new trial.

*Livermore*, for the defendant. · One question is, whether the contract constituted a partnership between the parties. On this see 16 *Johns.* 34, *Dob* vs. *Halsey*.

The parol agreement that each might dispose of the leather, constituted them partners, even if they were not so by the original written agreement.

If the court are of opinion that the contract gave Hadlock an interest in the leather, the award did not divest it. *Caldwell on Arb.* 137. A change of property in a chattel is not effected by the mere operation of the award.

One of the depositions used was written before the witness came before the magistrate. This practice is censured, 2 *Johns. Ch. Rep.* 345, *Underhill* vs. *Van Cortlandt.* As to copying the other, we refer to 5 *N. H. Rep.* 98, *Bean* vs. *Quimby.*

*Goodall, & Morrison*, for the plaintiffs. The first point is well settled by the decided cases. The agreement of Hadlock was to tan for D. Clement & Co. If there had been a partnership, he would have agreed to tan for the company of which he was a partner. He was to have part of the profit for his services. 3 *Kent's Com.*, *4th Ed.*, 25; 14 *Pick. R.* 194, *Turner* vs. *Bissell;* 12 *Conn. R.* 69; 18 *Wend. R.* 175, *Champion* vs. *Bostwick;* 20 *Wend. R.* 70, *Vanderburg* vs. *Hull.*

The agreement that each should use some of the leather, does not constitute a partnership.

The point, that the property was not changed by the award, was not taken at the trial. It was then contended that Hadlock could revoke the submission. But after an award is published, the submission cannot be revoked. 4 *Conn. R.* 259, *Curley* vs. *Dean;* 11 *Johns. R.* 190, *Armstrong* vs. *Marsten;* 1 *N. H. Rep.* 61, *Jessiman* vs. *The Haverhill & Franconia Iron Manufactory.*

Clement v. Hadlock.

The submission itself shows that the plaintiffs were to have the leather. *Story on Part.* 431.

The statute contains no provision that the deponent shall not write his deposition; and there can be no objection to the deponent's writing his testimony himself.

As to the other deposition, if the deponent had copied the entire affidavit, without any charge of corruption or unfairness, it is not objectionable. He had sworn to it before, and he knew it was true.

PARKER, C. J.* The contract, in this case, did not constitute a partnership. Hadlock was to perform a certain service for the plaintiffs, and his compensation was to be measured by the profits obtained on the hides.

The subsequent agreement, and proceedings, did not change the case in this respect.

We are of opinion also that the instructions to the jury were correct. If the award was well made, E. C. Hadlock was bound by it, notwithstanding he declared after it was published that he would not be so bound. It was then too late to revoke the submission, except by consent. And as Hadlock had then no claim or lien upon the leather, (even if he might have had before,) the plaintiffs might well maintain trover for a conversion of it.

The only remaining questions are upon the depositions.

There are doubtless objections to the practice of permitting witnesses to write their depositions before the time appointed for the caption, as it gives facility for copying them from papers furnished by the party, or for undue influence in relation to the mode of drawing up the testimony. But this practice has prevailed so long, that we should not be warranted in rejecting a deposition merely for that reason. It would undoubtedly be well that the testimony should be recorded in presence of the magistrate, if not written with his own hand; and upon the revision of our rules we may prob-

---

* WOODS, J., having been of counsel, did not sit.

ably adopt one upon this subject. As to the other deposition, it was not only written before the time, but it was copied, to some extent, from another paper, which was at a previous time drawn up by one of the plaintiffs, and sworn to by the witness. It is said, in nothing material. But the affidavit is not produced, so that we can see that the matter was immaterial, and on account of the introduction of this deposition the case must be transferred for a

*New trial.*