# BELKNAP,

## JULY TERM, A. D. 1852.

## BOWMAN *v.* SANBORN & HARPER, EXRS.

When an inferior court undertakes to settle a question of fact, without the intervention of the jury, which question is proper and legal for the court to decide, the decision is final and not open to review or reversal by a superior court, unless the court below sends up the question of fact expressly for the determination of the court above.

If a party takes an exception to a deficiency of evidence on the part of his adversary, which is in fact well founded, but is erroneously overruled, and he afterwards supplies that deficiency by testimony produced by himself, he thereby waives or overrules his exception.

The testimony of a witness who has seen a person write but once, is competent to be submitted to a jury to prove his handwriting.

If a witness has knowledge of a person's handwriting, which has been derived from having seen his signatures or writings in transacting business with him, so that the papers have been acted upon and recognized as genuine by the individual, he may give his opinion as to the handwriting. Or, if his knowledge has been acquired by an intimate acquaintance with signatures which have been adopted into the ordinary business transactions of life, he may also give his opinion.

It is competent for an expert to make a comparison between papers already in evidence in the cause and whose genuineness is not contested, and the handwriting in dispute, and give his opinion in regard to the same; and this, before any evidence of belief founded upon knowledge is produced. A jury may also make a comparison in like cases.

It is not the practice in this State to permit specimens of handwriting contained in documents irrelevant to the issue, to be introduced for the purpose of making a comparison, until after some evidence of belief founded upon knowledge has been laid before the jury. But after evidence founded upon knowledge has been introduced, specimens, whose genuineness is not in dispute, may be submitted for the purpose of a comparison.

Notarial copies of instruments, duly certified and authenticated, the originals of which, by the laws of the country where they are executed, are not within the power of the party to produce, are admissible as secondary evidence.

ASSUMPSIT, on review. The original writ was dated February 8th, 1843, and contained one general count for $12,000, money had and received by Smith Sanborn in his life time, for the use of the plaintiff, and for a like sum for money paid, laid out and expended by the plaintiff for said Smith ; and averred a demand and refusal, both upon Smith in his life time, and upon his executors since his decease. Under this general count the plaintiff filed the following specification :

" The plaintiff on the trial of this action will rely on, and put in evidence, the following facts, to wit : that Smith Sanborn, deceased, received of Peter McGill & Co., of Montreal, between the first day of October, 1831, and the first day of March, 1832, nine thousand six hundred dollars, at divers times between those dates, money belonging to the plaintiff, and he will claim to recover that sum, with interest on the same from the receipt thereof, as having been received to and for the use of the plaintiff, and as having been paid, laid out and expended by the plaintiff for said Sanborn, deceased."

The defendants pleaded, first, the general issue, and second, the statute of limitations.

To the plea of the statute of limitations the plaintiff replied that he had been in partnership with the said Smith Sanborn, and on the first day of October, 1831, they dissolved partnership, and Sanborn then fraudulently concealed the situation of the business and represented that the firm were owing Peter McGill & Co. the sum of eighteen hundred pounds, Canada currency, and to divers other houses and firms with whom Bowman & Sanborn had had accounts and dealings, the further sum of two thousand two hundred pounds, in all equal to the sum of $16,000, and that the plaintiff paid over to the said Sanborn the aforesaid sum, to discharge and liquidate the debts so represented to be due and owing to the said firms by Bowman & Sanborn, and Sanborn received said sum from said partnership ; that

in fact there was not any sum owing to said firms, and the concealment of said facts did not come to the plaintiff's knowledge till within six years next before the decease of said Sanborn.

To this replication the defendants rejoined that the said Smith Sanborn did not falsely and fraudulently conceal the plaintiff's supposed cause of action until six years next before the decease of the said Sanborn. And upon this, issue was joined.

In the course of the trial the plaintiff offered the deposition of one John Henderson, which was taken in 1843, and had been used upon the former trial. It also appeared that the parties had signed an agreement before that trial, to waive all exceptions to the captions of depositions then taken, of which the said Henderson's was one. The defendants now objected to the use of the deposition, because it appeared 'that the dates and material facts contained in said deposition were collected from a memorandum book of the witness, and were not testified to from his recollection, and that said memorandum book or a copy of the same should have accompanied the deposition. In support of their objections the defendants produced the affidavit of Stephen C. Lyford, Esq., which was as follows:

" I, Stephen C. Lyford, make oath and say, that I was present at the taking of the deposition of John Henderson, to be used in the action Baxter Bowman against Joseph M. Harper, before Justice Woodbury, at Troy, New York, as counsel for Mr. Bowman. The deposition of Henderson was taken and the dates and material facts were collected from a small memorandum book, which Mr. Henderson took from his pocket, and which memoranda were in Henderson's own hand writing, and which he stated to the justice were kept by him at the date of the transaction, and were made at his own instigation, and not with the knowledge or understanding of the plaintiff. The plaintiff was present, but I have no recollection that he spoke a word to the witness

6

during the whole transaction. The plaintiff did not produce any papers of any description, either to his counsel, the witness or the magistrate."

This affidavit was sworn to, February 25th, 1848 ; and it was agreed that it might be used on the trial, by either party.

The plaintiff offered an explanatory affidavit of Mr. Lyford, which was as follows :

" I, Stephen C. Lyford, state and say that I attended the taking of the deposition of John Henderson at Troy, before Justice Woodbury; that while giving said deposition, Henderson held in his hand a small book, about the size and appearance of bank deposit books ; that he occasionally looked into the book when he stated dates, and from which circumstance I supposed the facts he stated were there recorded. He stated before the justice that what was there stated were memoranda made at the time the conversation between Bowman and Sanborn took place, but said nothing about his want of recollection of the facts to which he testified. He did not say from what he testified, but his holding the book in his hand, and occasionally casting his eye upon it, led me to draw the inference which is stated in my affidavit, and I perhaps drew a wrong conclusion and stated the case stronger than I should.

*Question by the plaintiff.* Did or not said Henderson state what said memoranda were, or that they were memoranda, stating, in whole or in part, the facts which he stated in said deposition ?

*Answer.* Henderson did not state what his memorandum book contained, but these memoranda appeared to aid him in fixing the time of conversation, and other things which occurred during his employment with Bowman & Sanborn.

*Question by the same.* Did or not said Henderson state that he relied upon said memoranda, or that he could not state any of the facts or dates stated by him in said deposition without recurring to said dates ?

Bowman *v.* Sanborn.

*Answer.* He did not say that he relied upon any memorandum, for any purpose, to my recollection. Still, I supposed his dates in his book aided him in fixing dates of the time when conversations between Sanborn and Bowman took place. Henderson did not say that he could not state any fact in his deposition without his memorandum.

*Question by the same.* Did you read any thing written in said memorandum book, or hear any thing read from it?

*Answer.* I did not read or hear any thing read from this memorandum book.

*Question by the defendants.* You state in your other affidavit that the memorandum book was in the handwriting of the witness. How dô you know that fact?

*Answer.* Henderson said it was in his handwriting."

This affidavit was sworn to, February 27th, 1849.

These affidavits were both taken and sworn to long subsequent to the former trial.

The court having found that the witness did collect the dates and material facts from a memorandum book, the deposition was ruled inadmissible; to which the plaintiff excepted.

Another deposition of said Henderson, taken in October, 1849, was then offered and read without objection. To this deposition were attached two papers, one a statement of the notes and accounts due Bowman and Sanborn, and their stock on hand. This statement the witness said he believed was in the handwriting of a Mr. Matthews, who was in the employment of Bowman & Sanborn in January, 1831. The other was a due bill, purporting to be signed for Bowman & Sanborn by John Henderson, and dated October 1, 1831; and which the said Henderson swore was in his own handwriting. These two papers were produced and annexed to the deposition, at the request of the defendants, and were testified to by said Henderson, on cross-examination, without objection from the plaintiff, and were read to the jury without objection.

In the course of the defence, the defendants offered a certain book which purported to contain sundry matters touching the situation of the business between Bowman and Sanborn in January, 1831, at which time the said Matthews and Henderson were in the employ of Bowman & Sanborn. To show that the book was in the handwriting of Matthews and Henderson, the defendants offered as a witness, George Minot, Esq., who was permitted by the court, though objected to by the plaintiff, to compare the handwriting on said papers annexed to Henderson's deposition, and the signature of Henderson to the deposition, with the handwriting in the book, and to give his opinion, as an expert, that the handwriting in the book was the same as that of Matthews and Henderson upon the papers, and the same as Henderson's signature to his deposition. No exception was taken to Mr. Minot as an expert, but to the competency and admission of his testimony as tending to prove the handwriting in the book, the plaintiff excepted.

The defendants offered in evidence what purported to be a copy of a notarial deed of dissolution of copartnership between Bowman and Sanborn, dated October 6th, 1831, duly certified and authenticated according to the law of Canada. It appeared to have been entered into before P. Lukin, declared to be a notary public of the Province of Lower Canada ; the parties being residents of that Province at the time of its execution.

To lay the foundation for the introduction of this copy, the defendants proved that by the laws of Canada, when an instrument of that kind was executed before a notary public, the original was deposited in his office, and that there was no law by which it could be withdrawn ; and that it never was. That the only way to show its contents was by a certified copy from the notary, in case of his being alive. That after his decease his records were by law removed to the office of the prothonotary of the district, whose duty it was to give and certify the copies.

It appeared in this case that the notary, Lukin, was dead, and the copy produced purported to be certified by the prothonotary of the district. The official character and signature of the prothonotary were duly certified under the hand and seal of Lord Elgin, governor of the Province, whose signature was proved. The witness who testified to the law of Canada, also stated that he knew of no law to prevent the procurement of a copy of the notarial deed, by deposition under the oath of the notary or prothonotary, if he saw fit to give a copy in that way. But he had never known of such a thing, nor was there any way to compel him to do it. This copy was used upon the former trial of this action, and a copy of the same was produced and offered with the other copies of the case. No other evidence was given of the signatures of the parties or witnesses to said deed.

To the introduction of this evidence the plaintiff excepted, on the ground that there was no legal evidence of the existence or execution of the notarial contract of dissolution. But the court overruled the exception and admitted it.

The defendants also introduced a copy of a notarial deed of mortgage of certain lands, set forth in the contract of dissolution, which had also been used on the former trial and came up with the copies of the case, and in regard to which they offered the same evidence as to its existence and execution and the law of Canada, as was offered touching the notarial deed of dissolution; and the same exception was taken and overruled. Said deed purported to be witnessed by two witnesses.

The plaintiff offered the deposition of C. D. Day, but the court ruled it inadmissible. The deposition was as follows:

" I, Charles Dany Day, of the city of Montreal, one of the justices of Her Majesty's Court of Queen's Bench for the District of Montreal, in the Province of Canada, being duly sworn on the Holy Evangelists, do depose and say that for upwards of twenty-five years past I have resided in the

said city of Montreal, and for many years, that is to say, for upwards of fourteen years, before the year one thousand eight hundred and forty-two, I practised as a barrister and attorney in the said district of Montreal, and during ten years of this period Baxter Bowman, Esq. was in the habit of consulting and employing me professionally in matters requiring the aid of a lawyer. I recollect that Mr. Bowman applied to me for counsel, in a matter in which he stated he had been defrauded by Smith Sanborn, in the settlement of certain transactions and co-partnership accounts between them. The particulars of the business I cannot after so long a time recall to memory, but I have a recollection of recommending to him that he should suspend proceedings until Sanborn should come to Montreal, as he could manage the suit better in the court here, and Sanborn could be arrested by process of *capias ad respondendum* so soon as he came within the jurisdiction of our own courts. In this advice Mr. Bowman acquiesced. I cannot state the time at which this consultation took place. My book of accounts contains no entry of day charge against Mr. Bowman for the counsel given him on that occasion, because I was in the habit of charging a general retainer and counsel fee, and not of entering the particular matters on which I advised him. I am, however, confident that the counsel so given was given in the summer either of the year one thousand eight hundred and thirty-six or the following year.

*Cross-examined.* I cannot swear that the consultation aforesaid was not in the year one thousand eight hundred and thirty-five ; my impression is that it did not take place before the year one thousand eight hundred and thirty-six."

The jury returned a verdict for the defendants, which the plaintiff moved might be set aside, and a new trial granted for supposed error in the foregoing rulings of the court.

The questions arising upon the motion were reserved, and assigned to this court for their determination.

*Bell*, with whom was *Lyford*, for the plaintiff.

I. The deposition of John Henderson was improperly rejected; because,

1st. There was no evidence that Henderson testified from the memorandum which he referred to while testifying, or even that he used it to refresh his memory. It is quite consistent with the two affidavits of Mr. Lyford, that he looked at it after remembering the facts and dates correctly without any aid from it, by way of verification or merely of comparison.

The affidavits state a mere inference or conjecture, in a case where the fact could have been made to appear directly by cross-examination or otherwise.

2d. The witness testified as from memory, without stating that he referred to any minute, and the attempt, therefore, to show that he testified only by reference to a minute, is in effect an attempt to contradict him, which could be done only by evidence addressed to the jury.

3d. If the witness had used a memorandum to refresh his memory as to certain dates and facts, it could not be a ground for the rejection of his whole deposition, but only of that part of it in which he stated these facts; and the burden was upon the party objecting to it to show to what portions the objection applied. " It was incumbent on him to explore the sources of the witness' knowledge." *Moody* v. *Rowell*, 17 Pick. Rep. 490. It is palpable that the objection could not apply to such statements as " that the defendant and Smith Sanborn were engaged together in the lumbering business in Buckingham;" " that he was their clerk," &c. And the plaintiff was entitled to the testimony of the witness in regard to these general facts, which no witness would derive from minutes.

4th. If the deponent had used the memorandum to refresh his memory, it is believed to be altogether clear upon authority, that it was not necessary that he should annex it to his deposition, and that if annexed it could not have been

read as evidence. The witness, if he had testified in court, might have used the paper to refresh his memory without producing it in court. Its non-production could at the most, merely affect the credit of the witness. And if produced and used by the witness while testifying, the paper could not be read as a part of his testimony in chief, though its contents might furnish the party against whom he was called with the materials for a cross-examination of the witness.

In respect to these positions, the elementary treatises on evidence and the decided cases concur. *Greenleaf* says that where writings are used to assist the memory of the witness, it does not seem necessary that the writing should be produced in court, though its absence may afford matter of observation for the jury, " for the witness testifies at last from his own recollection." 1 Greenl. on Ev. § 437 ; *Doe* v. *Perkins*, 3 Term. Rep. 754, and *Tanner* v. *Taylor*, referred to in that case.

That the memorandum cannot be read as evidence ; see *Kensington* v. *Inglis*, 8 East's Rep. 289 ; *Maughan* v. *Hubbard*, 8 B. & C. 14 ; 1 Greenl. on Ev. 483.

And if it were to be conceded that the party cross-examining the witness had the right to put the minute in evidence as a part of his cross-examination, still, where, as in this case, he has made no attempt to do this, he cannot insist on excluding the deposition on account of his own neglect or omission.

This deposition was used without objection on the first trial of the action.

This case has no resemblance to those where the witness, recollecting none of the facts, verifies a writing made by him, and which he is able to testify contains a true record of them. In such cases the writing is received as original evidence, and the testimony of the witness is admissible only to verify the writing, and not to the facts contained in it. Such was the case of *Haven* v. *Wendell*, 11 N. H. Rep.

112. See also 1 Stark. Ev. 154, where the distinction is clearly stated. 1 Greenl. Ev. § 437.

In this case the defendants not only did not show that the witness had no recollection of the facts stated in his minute, but fail to make it appear that he recurred to it even to refresh his memory, except by an inference, which was by no means a necessary one. The witness testified to the matters stated in his deposition, as facts recollected by him at the time of giving it, and no evidence showed it to be otherwise. The materiality and importance of the testimony, which are enhanced by the early period in the controversy at which it was given, will not, as we suppose, be controverted.

II. The defendants should not have been permitted to give in evidence the book, the hand-writing of which was proved to be that of Matthews and Henderson, only by a comparison with other writings said to be theirs.

Even in regard to the hand-writing of Henderson, where the comparison was in part with the signature to a deposition used in the case, this, according to the settled law of this State, should not have been received alone, but only after the introduction of some of the other usual evidence of his hand-writing. It will be observed that the papers annexed to the deposition, and which the case states to have been read without objection, were not offered for the purpose, nor with notice that they were to be used for the purpose, of comparison.

In respect to Matthews' hand-writing, the comparison was with those papers alone not put into the case by the plaintiff, nor admitted by him to be genuine, nor proved to have been written by Matthews, and, therefore, was not admissible even as suppletory evidence. *Myers* v. *Toscan*, 3 N. H. Rep. 47; 1 Greenl. on Ev. 612, 613.

" Such comparisons can be made only with papers already in the case and admitted to be genuine." In this case there was no such admission, but merely the ordinary proof of

genuineness, founded only upon the opinion of the depo-
nent, from his knowledge of Matthews' hand-writing. This
entitled the defendants to introduce these papers without
the consent of the plaintiff. This case does not fall within
either of the exceptions laid down by the same author.
1 Greenl. on Ev. § 581.

III. The notarial deeds offered by the defendants should
not have been received until authenticated by the kind of
proof required by the law and practice in this State.

As to the mode of proof of facts, the *lex fori* is to be re-
garded, though it is otherwise as to their effect when ad-
mitted in evidence. Questions of the admissibility and
manner of proof relate to the mode of proceedings, which,
as the plaintiff submits, must from the necessity of the case
be determined by the law of the place where the trial is had.
*Story*, in his treatise on the Conflict of Laws, chapter 17,
discusses without deciding this question. See also the same
work, § 556.

IV. The defendants having relied, as a ground of de-
fence, upon the delay of the plaintiff to institute the suit,
and contended that he intentionally forbore to sue till after
the decease of Smith Sanborn, the deposition of Day should
have been received, to show that the plaintiff was taking
steps towards the commencement of a suit at the time men-
tioned by the witness.

*Bellows*, with whom was *Pierce*, for the defendant.

I. The use of the deposition of Henderson on the former
trial, without exception, cannot be regarded as a waiver of
the defect, unless the defect was then known. And such
does not appear to be the fact, as the evidence of it in Mr.
Lyford's affidavit was taken long after, and the defendants
did not appear at the caption.

In regard to the weight and sufficiency of the evidence
to establish the defect in the taking of the deposition, the
finding of the court below is conclusive. If there was any

evidence that the facts stated in the deposition were taken from a memorandum, without any memory in the witness, it was for that court to weigh it and determine its effect. And such evidence there was.

It appeared that the deposition was taken about twelve years after the events about which the witness testified; that the plaintiff and his counsel were present, but the adverse party was not; that the witness had and used a memorandum, containing the dates and material circumstances, which was neither annexed nor referred to in the deposition; and the plaintiff's counsel, who was present at the caption, testifies that the witness collected the dates and material circumstances from the memorandum. This obviously may be construed to mean that for those things he relied upon the memorandum. If so, the deposition ought to be rejected. The court whose duty it was to determine the effect of this evidence, found that the witness did collect the dates and material facts from the memorandum. And the rejection of the deposition on that account, shows that they understood by that finding, that the witness relied upon the memorandum for his facts and dates. The explanatory affidavit was of course to be considered and weighed by the court below, but it was for them alone to say how far it modified the other.

Again, the deposition should be beyond suspicion; but instead of that, there is good reason to believe that the statements were taken from the memorandum rather than the memory of the witness; especially when it is considered that the testimony on this point is drawn from the plaintiff's counsel. The memorandum purporting to be made at the date of the events related, was used in such way that the party's own counsel says that the facts were collected from it. That being so, it was the duty of the party taking the deposition to see that the character of the memorandum be stated in the deposition, and the extent to which it was used stated; whether merely to refresh the memory or

otherwise. As it was not so stated, it is to be taken most strongly against the plaintiff. The inferences we make are also strengthened by the fact, that although the deposition of the same witness was afterwards taken by the plaintiff in the presence of the adverse party, yet the plaintiff was disposed to prefer the old one. Besides, nothing is more common than for well meaning witnesses even to make no distinction between what they remember and what they have recorded. If the witness relied upon the memorandum rather than his memory, it should have been produced and brought within the principle of *Haven* v. *Wendell*, 11 N. H. Rep. 112.

When the counsel for the plaintiff says the witness testified as from memory, he begs the question. The witness does not state that he then remembered, but says the fact was so ; leaving it to be settled upon collateral evidence upon what grounds he makes the statement.

It being shown that the witness collected his dates and material facts from the memorandum, the whole deposition must of course be rejected, for the whole is included. There is no ground for any distinction, nor could any be made. *Clement* v. *Hadlock*, 13 N. H. Rep. 185; *Shaw* v. *Lindsay*, 15 Vezey's Rep. 350 ; *Underhill* v. *Van Courtland*, 2 Johns. Ch. Rep. 345.

II. In regard to the proof of Henderson's hand-writing, the witness, George Minot, Esq., was allowed as an expert to compare the hand-writing in the book with Henderson's signature to his deposition, read by the plaintiff, and the signature to the paper attached, and which he swore was his. The signature to the deposition stands upon the ground of an admitted signature. It was produced by the party as his signature, and it was not denied that it was genuine. It stands, then, as if he had compared it alone with the signature to the deposition, as he testified it was the same as that, and the reference to the signature could do no harm.

But the other signature was proved by their witness, and

the paper was produced by the defendants on the cross-examination, yet it was for a purpose not connected with the proof of the hand-writing, but to impeach the witness' statement on another point; and the paper was read by the plaintiff. We therefore submit that an expert might compare with either.

When other writings already in the case are admitted to be genuine, the comparison may be made either with or without experts; the objection being to the introduction of other papers for that purpose, and selected with that view. 1 Greenl. on Ev. (3d ed.) page 734. So of papers introduced for other purposes and proved to be genuine. 3 Cowen's Philips' Ev. 1326; *Griffith* v. *Williams,* 1 Cromp. & Jervis' Rep. 47; *Doe* v. *Newton,* 5 Adol. & Ellis, 514. In both of these cases the court held that a comparison might he made with papers already in the case for another purpose.

Such is assumed to be the law in *Doe* v. *Suckermore,* 5 Ad. & El. 703. So in *Bromage* v. *Rice,* 7 C. & P. 548; *Waddington & ux.* v. *Cousins,* 7 C. & P. 645; *Morgan's case,* 1 Moo. & Rob. 134; *Hammond's case,* 2 Greenl. Rep. 33; Grisley's Eq. Ev. 191; *Allesbrook* v. *Roach,* 1 Esp. Rep. 350; *Homer* v. *Wallis,* 11 Mass. Rep. 309.

*Moody* v. *Rowell,* 17 Pick. 490, goes even further than we claim. And the case of *The State* v. *Carr,* 5 N. H. Rep. 367, shows that the courts in this State have been disposed to relax the strictness of the old rule. And if an expert may be permitted to compare the hand-writing of the paper in question with the exemplar formed in his mind by having seen in circulation papers purporting to be signed by the same party, no good reason can be offered for rejecting such comparison with a paper already in the case for another purpose, and proved or admitted to be genuine. Especially is it so in this country, where the jurors can all read and write, and in consequence are less likely to be misled. In fact, evidence of this kind is more satisfactory than the evi-

dence admitted in *The State* v. *Carr;* and this, we think, is in accordance with common experience. *Fowler* v. *Hilliard*, 2 N. H. Rep. 480, goes to the same point.

In *Richardson* v. *Newcomb*, 21 Pick. Rep. 315, the doctrine of *Homer* v. *Wallis* is maintained, and it is also held that the jury may be aided by experts in the comparison.

The papers in this case annexed to the deposition of Henderson were introduced for purposes other than comparison, as an inspection of the deposition will show.

III.  As to proof of the notarial copies.  It was shown that they could not by the law of Canada be brought into this jurisdiction.  It was then equivalent to the loss of them; and in such cases a copy certified by the officer having custody of them and whose duty it is to give copies, are the best and regular evidence.  As in the case of a lost deed here, the practice is to read a copy certified by the register of deeds.  The two cases are alike, except in this, that the law of Canada makes such copies evidence expressly.  Besides, the copies came up with the papers, in accordance with the provisions of chap. 192 § 8 Rev. Stat., under which such papers are read without exception.

IV.  The deposition of C. D. Day was only to conversations between him and the plaintiff, from which the plaintiff proposes to have the jury infer that his delay was by advice of counsel.  We take it that no evidence either way would be admissible on that point.

EASTMAN, J.  The question which has been most fully discussed by the counsel in this case, relates to the correctness of the ruling of the court in excluding the deposition of Henderson; and to this question we will first turn our attention.

It appears that two depositions of the witness had been taken; one, *ex parte;* and the other, upon appearance.  The one taken *ex parte* was first offered, and was objected to on the ground that it had been improperly taken.  This ob-

jection was sustained by the court upon the facts which then appeared. The other deposition was then read and used by the plaintiff without objection. Has the party sustained any injury by the ruling by which the deposition was excluded ?

In arriving at a solution of this question, several principles connected with the taking of depositions may properly enough be alluded to. They are said to be an unsatisfactory species of evidence, unknown to the common law, and that courts have no authority to cause them to be taken except where the power is given by statute ; and that when taken, the statutes giving the power must be strictly complied with. *Bell* v. *Morrison*, 1 Peters' Rep. 351 ; *Bradstreet* v. *Baldwin*, 11 Mass. Rep. 229 ; *Evans* v. *Eaton*, 7 Wheaton's Rep. 356 ; *Frye* v. *Barker*, 2 Pick. Rep. 65 ; *Winooskie Turnpike Co.* v. *Ridley*, 8 Vermont Rep. 404.

Depositions must not only be taken according to strict statutory requirements, but they must be properly, fairly and impartially taken. This is a matter familiar to the bar of this State. Thus, if it appear that the opposite party was notified to attend the caption at a time when he must necessarily be absent, or engaged in important business requiring his personal attention, and this was known to the party giving the notice, the deposition will be rejected. *Ela* v. *Rand*, 4 N. H. Rep. 54. So a deposition taken before one who has acted as agent of the party in the same cause, is inadmissible. *Smith* v. *Smith*, 4 Greenl. Rep. 408. Or before a justice who has appeared in behalf of a party at the taking of a deposition to be used in the cause, and examined the witness. *Whicher* v. *Whicher*, 11 N. H. Rep. 348. And a deposition taken before an uncle of one of the parties to the suit, is inadmissible for such party. *Bean* v. *Quimby*, 5 N. H. Rep. 94.

In *Shepard* v. *Thompson*, 5 N. H. Rep. 95, a deposition was ruled inadmissible where a party had noted a part of the testimony of the witness on a slate, although it was

afterwards reduced to writing by the justice. So it is a valid objection to a deposition that it was dictated or written by an attorney in the cause. *King* v. *Dale*, 1 Scam. Rep. 513. In *Dana* v. *Underwood*, 19 Pick. Rep. 99, it was held that a deposition taken by a party, in which he has embodied, by way of interrogatory, a copy of a deposition of the same witness, previously taken in the same action by the other party, but which this other party did not see fit to use, was inadmissible. In Pennsylvania, a deposition written by a witness previously to his examination before the justice, the caption being prefixed to it in the handwriting of the justice, is incompetent evidence. *McEntire* v. *Henderson*, 1 Penn. State Rep. 402. To the same effect is the case of the *United States* v. *Smith*, 4 Day's Rep. 121. And with us it has been held, that if a deposition be copied in a material part from an affidavit previously sworn to by the deponent, but drawn up by the party taking the deposition, it will be rejected. *Clement* v. *Hadlock*, 13 N. H. Rep. 185. We have not gone so far as in Pennsylvania, to hold it a sufficient objection to a deposition that the body of it is drawn up by the deponent, before coming to the place of caption, but the late learned chief justice, in delivering the opinion in the last case cited, says, in substance, that there are objections to this practice, as it gives facilities for copying the depositions from papers furnished by the party, and for undue influence in relation to the mode of drawing up the testimony. The doctrine of this case no doubt is, that if it should be made to appear that any portion of a deposition was copied from a paper or book furnished by the party, or that any undue influence had been used in drawing it up, the deposition would be rejected. These and other authorities that might be cited, all show that courts look with much scrutiny into the manner in which depositions are taken, and reject them whenever any impropriety or unfairness in the caption shall be made to appear.

It is obvious that improprieties and unfairness in the taking of depositions may be proved by evidence *aliunde*, disconnected from anything that appears upon the depositions themselves.

Another matter well settled is, that papers and exhibits referred to in depositions, cannot, as a general rule, be read, unless they are identified and annexed to the depositions and enclosed in them. *Petriken* v. *Collier*, 7 Watts and Serg. 392 ; *Jackson* v. *Shepard*, 6 Cowen's Rep. 444 ; *Humphreys* v. *Powell*, 1 Breese's Rep. 231 ; *Cray* v. *Canadine*, 4 Pike 216. If they are public records so that the originals cannot be removed, the same strictness is not required. So if the papers are not within the legal custody of the party or witness. Perhaps, too, if they are so referred to in the deposition as to make it clear that they are the papers, they may be read if not annexed.

It is also believed to be a principle well established, that when an inferior court, without the intervention of a jury, undertakes to settle and does settle a question of fact proper and legal for them to decide, their decision is final, and not open to review or reversal by a superior court. In *Higbee* v. *Bacon*, 11 Pick. Rep. 428, chief justice *Shaw* says, " the decision of a court held by a single judge must be deemed conclusive upon all questions of fact." This principle is sustained by other authorities. *Stearns* v. *Fiske*, 18 Pick. Rep. 24 ; *Crenshaw* v. *Jackson*, 6 Geo. Rep. 509 ; *Pelletreau* v. *Jackson*, 7 Wendell's Rep. 471 ; *Nash* v. *Harrington*, 1 Aiken's Rep. 39 ; *Hall* v. *Reed*, 17 Ohio Rep. 498 ; *Field* v. *United States*, 9 Peters' Rep. 182 ; *Strong* v. *Barnes*, 11 Vermont Rep. 221 ; *Kirby* v. *Mayo*, 13 Vermont Rep. 103.

This rule is not varied unless the court below undertake expressly to send up the question of fact. It cannot be reviewed any more than questions arising upon their discretion. And matters within the discretion of an inferior tribunal are not grounds of exception and cannot be re-ex-

7

amined in a superior court. *Clapp* v. *Hanson*, 3 Shepl. Rep. 345; *Jenkins* v. *Brown*, 21 Wendell's Rep. 454; *Feneley* v. *Mahoney*, 21 Pick. Rep. 212; *Cummings* v. *Fullum*, 13 Vermont Rep. 459; *Com.* v. *Sackett*, 22 Pick. Rep. 394; *Cutter* v. *Grover*, 3 Shepl. Rep. 159; *Sandford Manuf. Co.* v. *Wiggin*, 14 N. H. Rep. 441.

Another principle, which, by analogy, has a bearing upon this question, is, that a court will not interfere with the verdict of a jury where competent evidence has been laid before them, unless it appears that they have been guilty of fraud or some gross error. *Wendell* v. *Safford*, 12 N. H. Rep. 171; *Lisbon* v. *Bath*, 1 Foster's Rep. 319. And if a verdict will not be set aside as against evidence unless the court are satisfied that it was procured by corruption or by manifest mistake in the consideration and application of the evidence, the decision of the court below upon a matter of fact proper for them to decide, will not be interfered with, when this court can see that that tribunal had competent evidence to act upon.

With these propositions we will proceed to the facts in this case. The deposition of Henderson was offered, and was objected to upon the ground that the dates and material facts contained therein were collected from a memorandum book of the witness, and were not testified to from his recollection. This ground of objection, if true, would be fatal to the admission of the deposition. It is no other than this, that the substance of the deposition—all the material facts contained therein—were not the testimony of the witness, but a copy from a memorandum book. If the witness had been upon the stand and had testified that he had no distinct recollection of the facts connected with the case, but could read them from a memorandum book, his testimony would at once have been rejected, unless he could state sufficient to make the book itself competent evidence upon the principle laid down in *Haven* v. *Wendell & al.*, 11 N. H. Rep. 112. And if he had stated in his deposition

that he took all the material facts from a memorandum book, and did not testify from recollection, the deposition could not be received unless he had also stated that he committed the matters in the book to writing soon after they transpired, that he knew they were then correct and should have sworn to them at that time from recollection, and had then returned the book with his deposition so as to make it a part of it. The deposition, without the statements to bring it within the principle of *Haven* v. *Wendell*, would contain within itself evidence of its entire illegality and incompetency. And such was the purport of the decision in the case of *Hall* v. *Ray*, Hillsborough, July Term, 1846.

But here the deposition does not show of itself that it was improperly and illegally taken. It does not say that it is in substance a copy from a memorandum book, and that the witness did not testify from recollection; but evidence was submitted to the court below from which they found that the dates and material facts were thus collected. A portion of this evidence is sent to this court, that we may see whether or not there was competent evidence for that court to consider. Other evidence was undoubtedly before them. They had the deposition itself, from which they could see that it related to occurrences which transpired some twelve years before the caption; and that it was taken *ex parte*, in the State of New York. They had the fact that another deposition of the same witness had been subsequently taken, upon appearance, and was then in the hands of the plaintiff; which deposition was afterwards used upon the trial without objection. And from all the evidence then before the court they decided the question of fact, that the deposition offered was, in all its material parts, copied from a memorandum book, and was not founded upon the recollection of the witness himself.

This question of fact decided by the court below, is not sent here for revision. It was examined and passed upon by that court, and the evidence sent up is not here that we

may review the question of fact, for it is apparent that we have not before us all the evidence which that court had; but it is sent up that we may see that there was competent evidence for the court below to consider and act upon. And the question of fact having been decided by that court upon evidence competent for them to consider, and not being expressly sent here for revision, this court will not, upon the principles above laid down, enter into any discussion as to what might have been their conclusions upon the same evidence. It was within the province of the common pleas to decide the question, and they having decided it, this court will not review the correctness of that decision.

The question then for us to pass upon is this : can a deposition, taken *ex parte*, which is made up of facts collected from a memorandum book, and not from the recollection of the witness, be held to be admissible ? Is such a deposition properly taken ?

If depositions are an unsatisfactory species of evidence at best ; if the statutes by which they are authorized to be taken must be followed with strictness ; if courts look with jealousy upon every thing that tends to throw suspicion upon the fairness or propriety in the taking of depositions, and reject them if copied from papers or if undue influence is used, it appears to us quite clear that a deposition, all the material facts of which are taken from a memorandum book, and are not the recollection of the witness, must be rejected as improperly taken.

But even if the deposition was erroneously rejected, the plaintiff has suffered nothing by the ruling. In *Clough* v. *Bowman,* 15 N. H. Rep. 504, it was held that if the deposition of a witness be erroneously rejected and the party subsequently procures the attendance of the witness and avails himself of the benefit of his testimony upon the trial, the rejection of the deposition will not furnish ground for a new trial. The very learned chief justice, in delivering the opinion of the court in that case, says : " As the plaintiff

had the benefit of the testimony of the witness, his exception comes to this, that by the rejection of the deposition he was put to the trouble and expense of procuring the attendance of the witness.  But this would not entitle him to a new trial, even if it were in consequence of the erroneous ruling of the court.  If a party takes an exception to a deficiency of evidence on the part of his adversary, which is, in fact, well founded, but is erroneously overruled, and he afterwards supplies that deficiency by testimony produced by himself, he thereby waives or overrules his exception."

In this case the party had two depositions of the same witness; one taken *ex parte*, and the other subsequently upon notice.  An examination of the depositions shows the latter to be much more full than the former, as would naturally be the case.  He offered the one taken *ex parte*, and the court ruled it out as improperly taken.  Instead of resting upon that ruling and testing its accuracy in this court, he proceeded and offered the other deposition, and it was used without exception.  He thus had the benefit of the testimony of the witness; and upon the principle of *Clough* v. *Bowman*, waived or overruled his exception by the use of the second deposition.

We pass now to the consideration of the second question raised in the case, and that is, whether the testimony of Mr. Minot was competent to be submitted to the jury as tending to prove the hand-writing of the book.  The book purported to be that of Bowman and Sanborn, and it became material for the defendants to show the entries therein to be in the hand-writing of Matthews and Henderson, who were clerks of Bowman and Sanborn at that time.

There is undoubtedly much conflict in the decisions in regard to the evidence necessary to prove private writings, and particularly as to the comparison of hands.  And we do not propose to go into an examination of the different

rules recognized by the authorities, but simply to state what we understand the rule to be in our own courts.

If a witness has any knowledge of the hand-writing of the person in question, which has been derived from seeing him write, though it be but once, he may give his opinion as to the *genuineness of the signature* or writing in dispute. And if his knowledge has been derived from having seen genuine signatures or writings of the person, either in transacting business with him, so that the papers have been acted upon and recognized by him as genuine, or by an intimate acquaintance with signatures which have been adopted into the ordinary business transactions of life, he may give his opinion of the hand-writing. *The State* v. *Carr*, 5 N. H. Rep. 367; *Myers* v. *Toscan*, 3 N. H. Rep. 47; *Furber* v. *Hilliard*, 2 N. H. Rep. 480.

Where papers are already in evidence for other purposes, and about whose genuineness there is no dispute, the jury may make a comparison between them and the writing in question; or an expert may make a comparison and testify as to his opinion in the matter. But the practice with us has no doubt generally been, not to rely upon the comparison till evidence of belief in the hand-writing, derived from a knowledge of the same, has been introduced; and this course has been pursued upon the authority of *Myers* v. *Toscan*, before cited. It will be observed, however, that the decision in that case is this, that "it cannot be left to a jury to determine the genuineness of a signature to a paper, merely by comparing it with other signatures *proved* to be genuine." And the facts stated in the case show that the comparison there made was between the signature in dispute and a paper introduced in evidence for the sole purpose of making the comparison. The court do not say that a comparison may not be made between the signature in dispute and papers already in evidence in the cause whose genuineness is not in controversy, but the purport of the decision is, that papers cannot be introduced into the

Bowman *v.* Sanborn.

cause which are irrelevant to the issue, for the sole purpose of making the comparison, until some evidence of knowledge has been first introduced. Understood in this manner, the decision does not conflict with the principle of allowing a comparison to be made by the jury, without previous evidence of opinion being laid before them, either with or without the aid of experts, between papers already in the case and admitted to be genuine, and the hand-writing in question. And whatever doubts may have heretofore been entertained by the profession as to the true rule in this respect, we think it should be considered as established, that a party may rely upon a comparison thus made, without being first required to introduce evidence of belief founded upon knowledge of the hand-writing. We think, too, that equally as much if not more reliance can be placed upon such a comparison, than upon the mere opinion of a witness who has seen the individual write but once. It is seldom that we have a juryman upon a panel who is not capable of comparing and judging with a good degree of correctness, and very many of our jurymen are able to make a comparison with skill and accuracy.

We have not gone so far as to hold that writings may be proved solely by introducing papers and documents irrelevant to the issue, and then leaving it to the jury or an expert to institute a comparison between the documents thus introduced and the hand-writing in dispute. Our practice in such cases is to introduce evidence of belief founded upon knowledge, and then to allow specimens to be laid before the jury which are admitted to be genuine, and a comparison to be thus made. If there is any controversy as to the genuineness of the specimens, they are excluded, and for the obvious reason that collateral issues would at once be raised upon them, should a different course be taken.

In the case before us, the papers with which the comparison was made had already been read to the jury by the plaintiff himself without objection. They were put into

the case by him, on cross-examination it is true, but in connexion with the evidence which went to establish his claim. We must, therefore, consider the papers as in the case for other purposes than a mere comparison, and to be genuine; and such being the fact, the expert might well enough make the comparison and give his opinion in regard to the same. The weight of the evidence would be for the jury, who could also make the comparison for themselves.

The question as to the admissibility of notarial copies like those used in this case, has been considered in two of our States, Louisiana and New York, and probably more. In Louisiana, in the case of *Las Caygas* v. *Larionda's Syndics,* 4 Martin's Rep. 283, the principle of the *lex loci* was pretty fully adopted. It was there held that the copies might be received in the same manner as in the local courts, with this qualification only, that the courts of Louisiana were not bound to take judicial notice of the official character and signature of the notary. In New York, in the case of *Mauri* v. *Hefferman,* 13 Johns. Rep. 38, the question as to the extent to which the *lex loci* ought to prevail was not definitely decided. The court were inclined to think that the copies were not evidence *per se,* but that they were admissible as forming a part of the inferior evidence to be resorted to instead of the originals. As to the credit due specifically to such copies, the court say: " It appears to be a part of the official duty of the notary to give copies; he is especially entrusted with that power; and in giving such copies he acts under his oath of office. The instrument is executed before him in his official capacity, and an official certified copy necessarily implies that he saw the instrument executed. In what respect does this differ from an examination upon a commission? He can only swear that he saw the instrument executed, and that the copy furnished by him is under oath. Besides, we ought to be cautious in declaring that we will receive nothing short of the examination of the notary, under a commission, as there is no mode

of enforcing such examination; nor is a sworn copy, proved by a person who has compared it with the original, any higher or better evidence than that furnished by the notary, which is a copy under his oath of office."

It appears to us that there is much in the suggestion that we ought to be cautious in declaring that we will receive nothing short of the examination of the notary. By the law of Canada, the original instruments cannot be withdrawn from the custody of the notary, or prothonotary, in case of the death of the former. They have the sole and exclusive custody of the documents, and it is their duty to give and certify copies; but there is no law to compel them to give copies under oath, by way of deposition. How, then, could a party make his proof, in case the notary should refuse to give a deposition, and the court should hold that a certified copy, duly authenticated, was not competent? But we need pursue this inquiry no further; neither is it necessary to define the extent to which the *lex loci* should prevail in cases of this kind, since we hold these copies to have been properly received as secondary evidence. They were copies duly certified and proved, where the originals could not be had. The evidence as to the law of Canada, taken in connexion with the production of the copies, showed that the originals must have had an existence, and that they could not be produced. Where an original deed is lost, or is beyond the power of the party to produce, a copy duly authenticated may be used as a substitute. This is the doctrine of *Southerin* v. *Mendum*, 5 N. H. Rep. 420, in which it was held that where a deed of land is lost, or out of the reach of a party who claims under it, a copy from the register's office may be used as evidence. To the same effect is *Poignard* v. *Smith*, 8 Pick. Rep. 272, which was an action upon a mortgage; and it was there decided that if diligent search and inquiry are made for the mortgage deed by the demandant, and it cannot be found, he may give a copy from the registry in evidence.

The only remaining question in the case relates to the ruling of the court in excluding the deposition of Day; and in regard to that we entertain no doubt. The deposition contains a conversation between the witness and the plaintiff, and was offered not for the purpose of rebutting any evidence that had been introduced by the defendants, but to meet an argument which it was anticipated would be made, founded upon the surrounding circumstances of the case. Had the defendants introduced any evidence upon the point, so that an answer might have seemed called for, perhaps the deposition would have been admissible; though as a general rule a party cannot put in evidence his own statements relative to the matters in controversy.

*Judgment on the verdict.*