Mar. 22, 1876.} TAFT *v*. NORTHERN TRANSPORTATION CO.

*Amicus curiæ—Practice.*

Counsel, assuming to act as *amicus curiæ*, moved to discontinue an action. *Held*, that the conduct of causes is not the function of the *amicus curiæ*, and that counsel, having under that title moved to discontinue an action, must be taken to be acting on behalf of the party, and to take notice of the orders of the court in regard to that motion. The action having been discontinued on such motion, and afterwards the discontinuance stricken off against the opposition of the same counsel, still assuming to act as *amicus curiæ*—*Held*, that no exception having been taken by him, the objection must be considered as waived.

On motion to dismiss for not seasonably complying with an order of notice—*Held*, that the court might, in its discretion, deny the motion.

FROM MERRIMACK CIRCUIT COURT.

CASE, against the Northern Transportation Co. of Ohio, and against Wm. A. Wheeler, Wm. C. Brown, and John S. Eldridge, trustees of the second mortgage bonds of the Northern (N. Y.) Railroad Co., and against the Vermont & Canada Railroad, the Vermont Central Railroad, the Northern (N. H.) Railroad, the Concord Railroad Corporation, the Nashua & Lowell Railroad, and the Boston & Lowell Railroad, as common carriers of freight, for the loss of certain flour and corn *in transit*, delivered by the plaintiff to the defendants, to be transported from Chicago to Montpelier, Vt.

Service of the writ was made upon the Northern (N. H.) Railroad, the Concord Railroad, the Nashua & Lowell Railroad, and the Boston

& Lowell Railroad. There was no service of the writ upon the other defendants. The only attachment upon the writ was of seven cars, the property of the Vermont Central Railroad.

The action was entered at the April term, 1870, of the supreme judicial court for this county, at which term an appearance was entered for those defendants upon whom the writ had been served; and the action was continued to the October term, 1870, for notice, either personal or by publication, to the trustees above named, and to the Vermont & Canada and Vermont Central railroads. At the October term, 1870, and April term, 1871, the above rule was enlarged.

At the April term, 1872, C. P. Sanborn appeared as *amicus curiæ*, and moved that the action be discontinued as to the trustees of the Northern (N. Y.) Railroad, for want of service and neglect to give notice: whereupon it was ordered by the court that the action be discontinued at the next term as to parties not notified, unless notice should be published or given before that time. At the October term, 1872, no notice having been published or given, the action was discontinued by order of court as to the defendants upon whom no service of the writ had been made.

At the April term, 1874, the plaintiff's counsel moved to strike off the discontinuance as to all parties. The motion was resisted by Mr. Sanborn, who appeared as *amicus curiæ*, upon the ground that a year and a half had elapsed since the action had been discontinued as to such parties, and that they had a right to expect that the suit as to them had ended. The motion to strike off the discontinuance was granted, upon terms that the plaintiff pay costs of the term, taxed at $30, to Mr. Sanborn ; and notice was ordered to be given to said defendants by publication, returnable at the next term. Notice was given according to said order.

At the October term, 1874, Messrs. Sanborn & Clark appeared specially for said trustees, and for the Vermont & Canada and Vermont Central railroads, and moved to dismiss the action as to those parties. The judge who presided at that term having been of counsel, the defendants were not called or defaulted, nor was anything done beyond entering said motion upon the docket, and ordering the action continued.

At the present term of the court—April term, 1875—the plaintiff produced evidence that the order of publication, made at the April term, 1874, had been complied with, and moved that the Vermont Central Railroad be called and defaulted. Messrs. Sanborn & Clark, appearing specially, resisted said motion, and renewed their motion to dismiss the action as to the defendants, upon whom the writ had not been served ; and also claimed that, at the April term, 1874, the presiding judge had reserved for the consideration of the court, at the law term, at the request of Mr. Sanborn, who then appeared as *amicus curiæ*, the questions raised by his objection to the orders and rulings at that term. The docket, however, does not show that any questions were reserved.

The motion to dismiss was denied. The plaintiff's motion, that the Vermont Central Railroad be called, was granted, and they were called and defaulted. Messrs. Sanborn & Clark, still appearing specially, then moved to strike off the default, and the court denied the motion; —all which rulings and orders were excepted to by Messrs. Sanborn & Clark. The plaintiff then moved for judgment upon the default against the Vermont Central Railroad.

The questions raised in the foregoing case were transferred to the superior court for determination by SMITH, J.

*Sargent & Chase,* for the plaintiff.

*Sanborn & Clark,* for Vermont Central Railroad.

CUSHING, C. J. It appears from the case that counsel, when moving to have the action discontinued against certain of the defendants, assumed to act in the character of *amicus curiæ.* That term, in its ordinary use, implies the friendly intervention of counsel to remind the court of some matter of law which has escaped its notice, and in regard to which it appears to be in danger of going wrong. It is not ordinarily the function of the *amicus curiæ* to take upon himself the management of a cause. When counsel undertook to move that the action should be dismissed as against certain of the defendants, he assumed to act as the counsel on behalf of those defendants. He was not reminding the court of something which had escaped its notice, but he was seeking to put in motion its power. Being recognized by the court in that capacity, the least that could be made of his action was a special appearance.

The rule of court provides that actions continued for notice will be dismissed at the second term if the notice is not published, unless on cause shown. Counsel, as *amicus curiæ*, might have reminded the court that here was a rule which it was in danger of violating, and then left it for the court to take such action as it should think proper to do. Counsel, however, instead of suggesting to the court the existence of this rule, took a very different course, and moved to discontinue.

In practice, a discontinuance is a chasm or gap left by neglecting to enter a continuance. By our practice, a neglect to enter a continuance, even in a defaulted action, by no means puts an end to it; and such actions may always be brought forward.

But, whatever may have been the intention of the mover and of the court, the defendant must be taken to have been represented when the orders were made, and should have excepted to them if irregular. It does not appear to me, however, that the order to strike off the discontinuance, made in the presence and with the knowledge of counsel, as it was, can be an irregularity. Neither was the renewal of the order for notice irregular. This brings us to the proceedings of the October term, 1875. The April term being held by a judge who could not sit in the case, no order except a simple continuance could be made. At

the October term counsel appeared specially, and moved the court to dismiss the action under the rule.   This is a very different motion from a motion to discontinue.   It is said, by the late Chief Justice BELL, in his argument as counsel in *Hackett* v. *Pickering*, 5 N. H. 21, that the rule adopted by the superior court at the February term, 1826—Strafford— "provides a new entry, unknown to the common law and the former practice of the court, for putting an end to those cases on the docket dismissed by order of court."

That rule provided that defaulted actions should not be continued without an order of court, and the entry, "dismissed by order of court," appears to have been devised by the court for the purpose of absolutely putting an end to such actions.   It is certainly true, that ordinarily a man has a right to suppose that, if he permits himself to be defaulted, the action against him will be ended; and I can well understand that cases of hardship might arise under any practice which permitted defaulted actions to be continued term after term, indefinitely, without any supervision of the court.

But the term *dismissed* acquired a technical meaning in suits at law in our practice.   I think that under the rule spoken of by Judge BELL, and ever since in our practice, the term *dismissed* has signified a final ending of the suit, not a final judgment on the controversy, but an end of that proceeding.   When the rule was revived in 1859, and applied to actions continued for notice in which the order of notice had not been complied with, I think the term *dismissed* had the same meaning.

The court, in the exercise of its discretion, appears to have come to the conclusion that sufficient cause was shown under the rule why the case should not be dismissed.   The case does not expressly transfer the question of discretion : if it did, I should not be inclined to revise it.

\* RAND, J., C. C.   This action was entered at the April term, 1870, of the supreme judicial court.   Upon some of the defendants no service was made.   At the April term, 1872, "it was ordered by the court that the action be discontinued at the next term as to parties not notified, unless notice should be published or given before that time."

"At the October term, 1872, no notice having been published or given, the action was discontinued by order of court as to the defendants upon whom no service of the writ had been made."

"At the April term, 1874, the plaintiff's counsel moved to strike off the discontinuance as to all parties.   The motion was resisted by Mr. Sanborn, who appeared as *amicus curiæ*."   But "the motion to strike off the discontinuance was granted, upon terms that the plaintiff pay costs of the term, taxed at $30, to Mr. Sanborn ; and notice was ordered to be given to said defendants by publication, returnable at the next term.   Notice was given according to said order."

---

\* SMITH, J., having presided at the circuit, did not sit.

At the October term, 1874, Messrs. Sanborn & Clark appeared specially and moved to dismiss. The motion was entered on the docket and the action continued.

At the April term, 1875, Messrs. Sanborn & Clark, appearing specially, " renewed their motion to dismiss as to the defendants upon whom the writ had not been served, and also claimed that, at the April term, 1874, the presiding judge had reserved for the consideration of the court, at the law term, at the request of Mr. Sanborn, who then appeared as *amicus curiæ,* the questions raised by his objection to the orders and rulings of that term. The docket, however, does not show that any questions were reserved." The motion to dismiss was denied.

I think the question raised by the motion to dismiss was a matter within the discretion of the court below. If the question is transferred, I can see no reason why the discretion of the court was not properly exercised, since the motion to strike off the discontinuance was also a matter within the discretion of the court; and I do not understand that the order of the court upon that motion is here for revision. *Foss* v. *Strafford,* 25 N. H. 78 ; *Bowman* v. *Sanborn,* 25 N. H. 87 ; *Watson* v. *Walker,* 33 N. H. 132 ; *Petition of Groton,* 43 N. H. 91.

STANLEY, J., C. C. The questions raised in this case were all clearly within the discretion of the presiding justice at the circuit court, and, as no question of discretion was transferred, the exceptions must be overruled.

*Exceptions overruled.*